THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTINE M. JANECEK, Defendant-Appellant.

Fourth District   No. 4—88—0734

Opinion filed June 28, 1989.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Robert W. Mueller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On June 28, 1988, following a bench trial in the circuit court of McLean County, defendant Christine Janecek was convicted of reckless driving and felony criminal damage to property. She was subsequently sentenced to concurrent terms of 6 months' and 30 months' probation, respectively, and she was ordered to pay $1,078.96 restitution. Defendant maintains on appeal her conviction should be reversed, because she proved, by a preponderance of the evidence, that she was insane at the time she led police on a 24-mile high-speed chase, and that she was unable to appreciate the criminality of her

conduct or to conform to the requirements of the law. We reverse.

Prior to trial, defendant was examined by Dr. Robert Chapman and, on June 1, 1987, following a hearing, was found unfit to stand trial. Following hospitalization and treatment, she was subsequently found fit to stand trial.

At trial, the State's only witness, Deputy Sheriff Greg Fillmore, testified that on April 6, 1987, he was in an unmarked squad car on Interstate 74 when a vehicle passed him traveling at a great rate of speed. He said he accelerated to 110 miles per hour, and the vehicle was pulling away from him. He then described the pursuit, which involved three police cars chasing the vehicle for 24 miles at speeds in excess of 100 miles per hour. He said he saw cars being forced off the road because of the high rate of speed of the car he was chasing. Fillmore indicated that when defendant's vehicle finally got off the interstate and pulled to a stop at a "T" intersection, defendant seemed to be confused. He said he then pulled his car in front of defendant's to block her path, got out of his car, and went to defendant's car to try to get her out. He said she was staring straight ahead, pulled her car forward and struck the squad car. He indicated that the squad car sustained over $1,000 worth of damages.

Fillmore then testified that when he opened her car door, defendant began screaming incoherently and struggling. Fillmore stated he had no reason to believe defendant was under the influence of alcohol or drugs at the time she was stopped, and he did not notice any odor of alcohol or any sign of motor skill problems or slurring of speech.

Fillmore testified that when he spoke to defendant later that day, she said she was on her way to Peoria, but her "car wanted to go" to Indianapolis. He said she indicated she had not heard the sirens but did see the various lights on the police cars. He said she told him she did not stop because she did not want to, that she ran cars off the road because she had been "drag racing" and that she knew she was breaking the law and driving recklessly. Finally, Fillmore said that defendant did not remember striking his car, but she said that if she did, it was his fault because he jumped out of his car with a gun in his hand. Fillmore admitted on cross-examination that he had drawn his gun from the holster when he approached defendant initially and that she was a "little agitated" when he interviewed her at the police station several hours after her arrest.

Dr. Robert Chapman then testified for the defense. He said (1) he was a psychiatrist and had examined defendant on May 1, 1987,

three weeks after her arrest; (2) he had reviewed the charges against her and the various police reports and documents relevant to this incident; (3) he obtained a medical history of defendant including numerous hospitalizations for mental problems in the previous 10 years; (4) based on his examination, he diagnosed defendant as having an "unspecified" psychosis, which was a "major mental disorder that prevents the individual from being able to organize her thoughts, function in day-to-day activity, and presents a break with reality to such a degree that, if unsupervised, unattended or unassisted, [she] would be unable to care for [herself]"; and (5) based on his examination of defendant three weeks after the incident, he was of the opinion that the mental disease or defect was present at the time of the incident, and she was, by the statutory definition (Ill. Rev. Stat. 1987, ch. 38, par. 6—2), insane.

Chapman indicated he formed his opinion because defendant was having delusions and hallucinations at the time of the incident and was fearful and believed she was in danger. He said she believed she needed to be evasive and get off the highway. He indicated his opinion would not be changed by statements defendant made following her arrest that she believed her activities were unlawful and reckless. He stated that defendant would have been willing to make any kind of statement she believed that those whom she feared wanted her to make. He also said his opinion would not be changed upon learning that defendant remembered seeing squad cars with lights but did not want to stop. He said defendant would be willing to make statements that were not in her best interests, because she was not aware and did not appreciate the circumstances.

David Janecek, defendant's former husband, testified at trial that (1) defendant was hospitalized 18 times between 1973 and 1987 for psychiatric treatment; (2) she was last hospitalized in 1984; (3) one evening, approximately one week prior to the incident, she took the car for a half-hour drive and called six hours later saying she was 150 miles away and out of gas; (4) she would lock herself in a room and play music loudly, while ignoring the couple's three children, who were aged 2, 10, and 12; and (5) in the weeks prior to the incident, she was afraid someone was going to harm her and talked about "pyramids and catching electric rays." He then described the various events which had led to her former hospitalizations.

Defendant then testified that on the day of the incident, she was not feeling well. She said she recalled being on Interstate 74, losing her sense of direction and traveling at a high rate of speed, but she said she did not know why. She said she recalled being at a stop

sign and could not decide whether to turn left or right when Officer Fillmore came around the back of his car. She said he called her a bitch and threatened to blow her head off if she did not get out of her car. She said he then threw her to the ground and beat her. She said he put handcuffs on her so tightly that she screamed for about three minutes. She denied hearing any voices concerning her route of travel.

Following arguments, the court indicated it considered all of the evidence, "especially [that] of the officer and the defendant" and that of her doctor and found that defendant had the capacity to understand the criminality of her actions and that she could have conformed her conduct to the requirements of the law. The court said it would not accept the defense of insanity under the conditions of the evidence presented and found her guilty of all charges.

■ When the defense of insanity is raised at trial, the defendant has the burden of proving, by a preponderance of the evidence, that the defendant is not guilty by reason of insanity. (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(e).) The statute provides:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1987, ch. 38, par. 6—2(a).

■ The question of defendant's insanity at the time of the offense is one of fact, and the fact finder's resolution of that issue will not be disturbed unless it is contrary to the manifest weight of the evidence. *People v. Martin* (1988), 166 Ill. App. 3d 428, 433, 519 N.E.2d 1085, 1088.

The State argues that the trial court acted within its discretion in basing its opinion on lay testimony and rejecting the expert's opinion on defendant's sanity. The State cites *People v. Marshall* (1983), 114 Ill. App. 3d 217, 448 N.E.2d 969, where this court affirmed a finding that the defendant was guilty but mentally ill at the time she shot her brother. There, the only evidence in support of defendant's assertion that she was insane at the time of the shooting was the opinion of a psychiatrist that she was incapable of conforming her conduct to the requirements of the law. The court pointed out, however, that inconsistencies in the physician's testimony raised "serious doubts" as to the validity of this conclusion (*Marshall*, 114 Ill. App. 3d at 226, 448 N.E.2d at 976) and was, thus, entitled to "little, if any," weight. Moreover, there, the testimony of defendant

demonstrated she was able to conform her conduct to the requirements of the law, and the State presented testimony that defendant was calm and did nothing unusual prior to the shooting.

The State also cites *People v. Spears* (1978), 63 Ill. App. 3d 510, 380 N.E.2d 423, where the court held that the State's evidence was sufficient to meet its then burden of demonstrating the defendant's sanity in spite of expert testimony to the contrary. There, the court noted that the jury was not required to accept the conclusions of the psychiatrist and that it could properly reach a finding of sanity by accepting lay testimony over expert testimony. The court noted the expert testimony was relatively weak, and other testimony by State witnesses as well as the defendant showed defendant appeared "normal" at the time of the incident. (*Spears*, 63 Ill. App. 3d at 520, 380 N.E.2d at 430.) The court noted the judgment of the lay witnesses was substantiated by testimony that the defendant was able to follow all instructions given to him on the day in question.

Here, however, there is no substantial disparity between the State and defense witnesses regarding defendant's capacity to conform her conduct to the requirements of the law. The officer's testimony tends to support that of the psychiatrist and defendant's former husband that she was not "sane" within the meaning of section 6—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 6—2).

In *People v. Garcia* (1987), 156 Ill. App. 3d 417, 509 N.E.2d 600, the defendant was found guilty of attempt (murder) in the stabbing of his brother. Witnesses for the State testified that shortly after the stabbing, defendant appeared "normal," was cooperative, indicated he understood his rights, and agreed to talk to the State's Attorney. Psychiatrists testifying for the defense indicated, however, defendant was a schizophrenic paranoid and was unable to conform his conduct to the requirements of the law.

The appellate court reversed a finding of "guilty but mentally ill," noting the evidence "convincingly" established that, at the time of the offense, defendant was suffering from a recognized mental illness and lacked the ability to conform his conduct to the requirements of the law. The court noted that the trial court did not seem to question the credibility of the psychiatrists appointed to examine defendant, but rather seemed to draw different conclusions than the psychiatrists. The court concluded there existed a reasonable doubt of defendant's sanity at the time of the stabbing and reversed the conviction.

In *People v. Williams* (1980), 87 Ill. App. 3d 860, 409 N.E.2d

439, at a hearing to determine a defendant's fitness to stand trial, the only witnesses who testified indicated the defendant was so incompetent as to be unable to assist in his defense. The trial court concluded that the psychiatrists' opinions were "guarded," "imprecise," and "in the nature of a psychiatric guess" and, based on "common sense," determined the defendant was fit to stand trial.

The appellate court reversed the finding of fitness because the only testimony at the hearing indicated defendant was not fit to stand trial. The court noted that such a conclusion should not be rejected by a trial court without other testimony or evidence that defendant was in fact fit. The court found the trial court's rejection of the expert witnesses' conclusions was not warranted, and its finding of fitness was against the manifest weight of the evidence.

■ Similarly, here, the testimony presented by State and defense witnesses indicated that at the time of the incident, defendant was "confused," "incoherent," and suffering from delusions and hallucinations. The psychiatrist who examined defendant a short time after the incident concluded she could not have conformed her conduct to the requirements of the law and indicated his opinion would not be changed by evidence of her alleged knowledge of the unlawfulness and recklessness of her acts. The testimony of the State and other defense witnesses substantially supported this conclusion. Thus, we conclude the trial court's rejection of the expert witness' conclusions was against the manifest weight of the evidence.

For the foregoing reasons, we reverse the decision of the trial court finding defendant guilty of the charges and remand to the trial court for entry of a finding of not guilty by reason of insanity and further proceedings pursuant to section 115—3(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—3(b)).

Reversed and remanded with directions.

LUND and SPITZ, JJ., concur.