THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS J. McKAY, Defendant-Appellant.

Fourth District   No. 4—90—0030

Opinion filed February 7, 1991.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Section 6—2(a) of the Criminal Code of 1961 (Code) provides that a "person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity *** to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(a).) The primary issue in this case concerns the imposition of that defense to a charge of reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)) and related offenses under circumstances where the evidence showed the accused suffered from a "schizoaffective disorder" but was also extremely intoxicated at the time of the occurrence involved. The case was tried at bench. The court rejected the insanity defense and found the defendant guilty of reckless homicide and driving under the influence of intoxicating liquor (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)) but mentally ill (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(c)).

The prosecution was initiated by an indictment brought against the defendant Thomas J. McKay in the circuit court of Champaign County on May 4, 1989. The offenses were alleged to have occurred on April 15, 1989. On January 4, 1990, the court imposed concurrent sentences of imprisonment of five years for reckless homicide and

three years for DUI. On appeal, defendant contends the court erred (1) in not acquitting defendant on the grounds of insanity, and (2) in imposing a sentence too severe under the mitigating circumstances. We affirm the conviction and the sentence.

We set forth the tragic circumstances of April 15, 1989, only to the extent necessary to explain the background under which the insanity defense was presented. Defendant had obtained possession of an automobile he had purchased and had been driving it. That afternoon he had been at Clinton Lake in De Witt County, where he had rented a boat. Evidence indicated that during this time defendant had driven the boat in such a way as to create a wake in an area where that was prohibited, irritating other persons and engaging in an exchange of angry words and obscenities with them. Later, at approximately 9 p.m., defendant attended a party and, by then, had become very intoxicated. A person at the party took away his car keys but defendant had another set and, using that set, he drove off in his automobile. A witness testified that at about 9:50 p.m. he saw defendant's car, traveling at a high rate of speed, hit a street lamp and later stop at a stop sign. The witness testified defendant's car proceeded five blocks farther, swerving into oncoming lanes, almost hit another vehicle and then stopped at a red light.

Eventually, defendant crashed into the rear of an automobile which was properly stopped in a left-turn lane waiting to make such a turn. Defendant's vehicle then swerved to the right, crashed through a brick wall, and entered a beauty shop. The driver of the car awaiting the turn was killed and her passenger severely injured. Two people who came into the beauty shop to try to help defendant testified he expressed concern about the beer he had in his car and requested their help in removing it before it was found by police. Other witnesses corroborated the reckless manner in which defendant had been driving. Undisputed evidence showed that at the time of the collision, defendant had a blood-alcohol content of .38, a figure so high that it would be fatal to many people. Evidence also indicated that at the scene of the collision (after it had taken place) and later, at a hospital, defendant was quite combative and assertive.

Defendant's father testified defendant had entered the United States Navy while a senior in high school and, after approximately two years, defendant was admitted to the Norfolk Navy Hospital—first for alcohol problems, but doctors there soon decided he had serious mental problems. According to defendant's father, defendant complained of headaches and a buzzing in his head at this time. Apparently, defendant was discharged from the Navy in 1987 or 1988

and returned home. His father described various behaviors by defendant which appeared paranoid and out of touch with reality. The father also explained defendant failed to take the medicine prescribed for him, contending it caused more headaches.

Dr. Lawrence Jeckel, a psychiatrist, testified he had studied the various available medical records concerning defendant and the information about defendant on which testimony had been presented. He had also interviewed defendant for approximately one hour at the Champaign County Correctional Center, and talked on a telephone with defendant's parents. Dr. Jeckel testified he believed defendant was suffering from a mental disease or defect in 1986 and that had continued until the present. He then testified to an opinion that, at the time of the collision, defendant was suffering from three mental diseases or defects. He described the three as underlying "schizoaffective disorder," "acute alcohol intoxication," and "alcohol dependence."

Dr. Jeckel described the "schizoaffective disorder" as one which "blends into manic-depressive illness." He indicated defendant was in the manic phase at the time of the collision. Irritability, impatience, a flight of ideas accompanied by a "real push to action" were listed as characteristics of this phase. Dr. Jeckel also stated defendant's other two disabilities were demonstrated by the high blood-alcohol content he had at the time of the collision and his long-standing tendency to drink very large amounts of alcohol.

Dr. Jeckel testified on direct examination that in his opinion, as a result of the three mental defects he had described, defendant was not "able to conform his conduct" to the requirements of law. He then stated: "[T]he underlying, the most prominent underlying problem for both [defendant's] alcohol intake and his mental state is a very serious mental illness which has been called schizoaffective disorder, and that because of this disorder was not under control and that this *led* to this, *him becoming out of control and the subsequent accident.*" (Emphasis added.) However, despite the causal relationship which Dr. Jeckel deemed to exist between defendant's schizoaffective disorder and the collision, on cross-examination Dr. Jeckel was unable to say whether, without defendant being intoxicated, his schizoaffective disorder would have prevented him from performing such functions of safe driving as stopping at stop lights at the time of the collision. Dr. Jeckel also stated that despite defendant's condition he might have stopped when crossing signals were red, but he might also have stopped when they were green.

In explaining its decision, the trial court stated in part:

"Regardless of the analysis in *People v. Free* [(1983), 94 Ill. 2d 378, 447 N.E.2d 218], and regardless of the argument which, I think, correctly states the evidence that *there was no testimony that the schizoeffective [sic] disorder standing alone, in any way, prevented the Defendant from conforming his conduct to the requirements of the law.* I look at all of the circumstances in this case, all of the evidence, and *irrespective of Dr. Jeckel's testimony,* I am not persuaded that the Defendant has established by a preponderance of the evidence that at the time of these offenses he was unable to conform his conduct to the requirements of law.

It is a fact that there were times during this tragic evening and the operation of that automobile in such an erratic fashion that the Defendant clearly was, based on the testimony of the witnesses, able to conform his conduct to the requirements of the law. *He did stop* at times when it was appropriate to stop. *There were times when he was not speeding. There were times when he was not weaving in the automobile.* When asked about that, I simply have to feel that Dr. Jeckel in his response, 'Well, he might have stopped if the light was green, too' is simply too equivocal a response to that vital issue on the evidence in this case. And I simply have to believe that it is not proved by a preponderance of the evidence that the Defendant lacked the ability to conform his conduct to the requirements of the law. When focusing down on that single issue beyond the evidence altogether, the evidence is just not there as is required to be. And accordingly, I find that the Defendant has not sustained that defense." (Emphasis added.)

■■ The defense maintains the court recognized defendant's schizoaffective disorder, but erroneously determined it did not prevent defendant from conforming his conduct to the requirements of law. The defense also maintains the court erred in failing to give sufficient consideration to defendant's alcohol dependency. The court's statement might indicate it deemed that even in defendant's extremely intoxicated condition, he still had the power to conform his conduct to the requirements of law because he had made some prior stops at required places. We need not pass upon whether the convictions can be upheld on that basis. We are not holding they cannot. Rather, we uphold the convictions because the court's findings inherently included a finding that the defendant's power to conform his conduct to legal requirements was not destroyed by his schizoaffective disorder. We conclude that under the law of this State, any loss of ability of defendant

to conform his conduct because of his intoxication, and any alcohol dependency he possessed, does not bear upon the insanity defense he offered.

In *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218, the court affirmed a conviction of murder and attempt (rape). Prior to the imposition of the death penalty, evidence was introduced that the accused, at the time of the killing, suffered from a psychosis resulting from drug ingestion. The supreme court held the trial court properly refused an instruction on the insanity defense. The supreme court explained:

> "Simply stated, a voluntary intoxication or a voluntary drugged condition does not raise the defense of insanity, but is governed by section 6—3 and may be used to negate the existence of the mental state which is an element of the crime. (Ill. Rev. Stat. 1977, ch. 38, par. 6—3.) A voluntary intoxication or a voluntary drugged condition precludes the use of the insanity defense *unless* the mental disease or defect is traceable to the habitual or chronic use of drugs or alcohol (*State v. Toth* (1977), 52 Ohio St. 2d 206, 371 N.E.2d 831) and such use results in a 'settled' or 'fixed' permanent type of insanity." (Emphasis in original.) *Free*, 94 Ill. 2d at 407-08, 447 N.E.2d at 232.

The primary case cited by the *Free* court in support of the foregoing pronouncement was *People v. Cochran* (1924), 313 Ill. 508, 145 N.E. 207. There, a man was convicted of murdering his wife. Evidence was presented indicating (1) he had a delusion his wife was conspiring against him, and (2) that he had been treated in the past for alcoholism apparently resulting from drinking bootleg whiskey. No evidence was presented indicating that defendant was intoxicated at the time of the killing. The jury was instructed that if the defendant was sane and drank intoxicating liquor knowing of its harmful effect and thereby became insane, and because of that insanity, killed his wife, the jury should find him guilty. In holding the giving of the instruction was reversible error, the supreme court stated:

> "There is evidence in the record that while in the insane asylum at Wichita Falls plaintiff in error was suffering from an attack of insanity from which a patient never recovers. By instruction No. 7 the jury might be led into the erroneous belief that if plaintiff in error was sane prior to his incarceration in the insane asylum at Wichita Falls, that he then voluntarily drank intoxicating liquor knowing that it would make him insane, that he *then became insane as the result of drinking such intoxicating liquor and that that insanity continued down to*

*the time he killed his wife,* such insanity would not be a defense even though it was to such an extent that he was not able to distinguish between right and wrong, or, being able to distinguish between right and wrong, had not sufficient mentality and will power to refrain from doing the act which resulted in the death of his wife. Long continued habits of intemperance which produce *permanent mental diseases* amounting to insanity, which so weaken and impair the mind that one committing an offense has not mind enough at the time to know right from wrong and has not sufficient mind and power of will to refrain from doing the act, relieve a person from responsibility under the law. Insanity of this sort and thus produced is the same, in law, as insanity arising from other causes." (Emphasis added.) *Cochran,* 313 Ill. at 517-18, 145 N.E. at 211.

Clearly, under *Free,* defendant's high degree of intoxication at the time of the collision was not a "mental disease or mental defect" recognized by section 6—2(a) of the Code as a ground of insanity exonerating defendant of criminal responsibility for the collision. Careful examination of the language of *Free* and *Cochran* also negates his alcohol dependency from constituting such exonerating insanity. The *Free* court stated that such insanity must be "traceable" to "habitual *use*" and must result in "a 'settled' or 'fixed' " permanent type of insanity, and the *Cochran* court indicated the type of alcoholism involved must permanently deprive the person afflicted of the ability to conform that person's conduct to the requirements of law. Here, the evidence gives no indication that most of the time, particularly when sober, defendant, although acting strangely, was unable to conform his conduct to the requirements of law. Dr. Jeckel testified that rather than defendant's alcohol dependency creating his schizoaffective disorder, his alcohol dependence developed as a result of and as a defense to that disorder.

The defense does not dispute that standing alone defendant's impairment because of his intoxication could not stand as an insanity defense. In response to the State's pointing out that Dr. Jeckel could not say the schizoaffective disorder alone produced an inability in the defendant to conform his conduct, the defense points out that Dr. Jeckel did stress that the schizoaffective disorder was the principal feature in bringing about defendant's condition. The defense also emphasizes the interrelationship between the three disorders which Dr. Jeckel found. However, no case has been called to our attention where a recognizable disease or disability, insufficient of itself to destroy the ability to conform the conduct of an accused to the requirements of

law, has been held to constitute the insanity defense when accompanied by a voluntary intoxication of the accused. While Dr. Jeckel explained defendant's choice of drinking heavily of intoxicants arose because of his schizoaffective disorder, Dr. Jeckel did not indicate defendant's consumption of intoxicants was involuntary.

■■ The law in Illinois does not favor intoxication as an excuse for criminal conduct. Intoxication negates specific intent only when it is "so extreme as to suspend the power of reason and render [a person] incapable of forming" such an intent. (Ill. Rev. Stat. 1987, ch. 38, par. 6—3(a).) When *involuntarily* produced, intoxication which deprives a person "of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law" is an affirmative defense. (Ill. Rev. Stat. 1987, ch. 38, par. 6—3(b).) In *People v. Rogers* (1988), 123 Ill. 2d 487, 508-10, 528 N.E.2d 667, 677-78, the supreme court held that a condition of intoxication arising from addiction is not involuntary within the foregoing legislation and is not a basis for the insanity offense unless of the type described in *Free*.

Defendant correctly points out that this court, in *People v. Janecek* (1989), 185 Ill. App. 3d 89, 540 N.E.2d 1139, and the First District Appellate Court, in *People v. Garcia* (1987), 156 Ill. App. 3d 417, 509 N.E.2d 600, *appeal denied* (1987), 116 Ill. 2d 566, and *People v. Arndt* (1980), 86 Ill. App. 3d 744, 408 N.E.2d 757, have upset convictions on review and required findings of not guilty by reason of insanity in cases where the testimony of psychiatrists testifying for the defense had not been seriously refuted. However, those were not cases where the accused was intoxicated and the evidence was uncertain as to whether diseases or defects of the defendant, other than the defendant's intoxication, were sufficient to deprive the defendant of the substantial capacity described in section 6—2(a) of the Code.

Here, to do so would require us to go further than to reject the trial court's determination the defendant's capacity to conform his conduct was proved by the fact he had made some of the required stops. We would also be required to adopt a dangerous rule, permitting imposition of the insanity defense by a person who had a disease or defect which impaired but did not destroy his substantial capacity to distinguish right from wrong or to conform his conduct to law when, after becoming severely intoxicated, either of those capacities was destroyed.

■■ Section 6—2(e) of the Code provides that a defendant has the burden of proving an insanity defense by a preponderance of the evidence. (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(e).) Thus, upon presenta-

tion of evidence of the defense, the State need not negate the defense beyond a reasonable doubt as is required of other affirmative defenses. (Ill. Rev. Stat. 1987, ch. 38, par. 3—2.) This court, in *Janecek* (185 Ill. App. 3d 89, 540 N.E.2d 1139), and the Second District Appellate Court in *People v. Martin* (1988), 166 Ill. App. 3d 428, 519 N.E.2d 1085, have set aside convictions and required defendants to be found not guilty by reason of insanity when the determination of the circuit court rejecting the insanity defense was deemed contrary to the manifest weight of the evidence. Recently, in *People v. Beehn* (1990), 205 Ill. App. 3d 533, 563 N.E.2d 1207, this court again held that when the defense of insanity is raised under section 6—2(e) of the Code and rejected by the trier of fact, a reviewing court should set aside the conviction because of the insanity of the defendant only when the finding of the trier of fact on that issue is contrary to the manifest weight of the evidence.

■ Here, the decision of the court convicting defendant and finding him mentally ill is not contrary to the manifest weight of the evidence. Thus, defendant is not entitled to a finding of not guilty by reason of insanity.

The thrust of defendant's argument concerning the sentence is that imposition of a sentence of five years for reckless homicide, which was the maximum sentence for that offense, was a breach of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Defendant, citing *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491, maintains the sentencing court must have rehabilitation as an objective of a sentence and asserts that defendant has shown a desire to become rehabilitated and can better be rehabilitated while not subject to incarceration. Dr. Jeckel testified at sentencing that a much better program to treat defendant's schizoaffective disorder and alcohol dependence could be given him than that which he received from the Veterans Administration.

■ Recently in *People v. Mott* (1990), 204 Ill. App. 3d 573, 561 N.E.2d 1380, this court remanded for resentencing in a case where a defendant convicted of a reckless homicide resulting in two deaths was given concurrent extended-term sentences of eight years' imprisonment. There, as here, the defendant drove recklessly at a time when impaired by a mental condition. There no voluntary use of large quantities of alcohol was involved. The defendant showed no arrogance as to persons trying to stop her from driving, nor as to others on the highway. There, we deemed the court's decision to impose punishment to clearly overemphasize retribution. Here, the court gave adequate consideration to the defendant's mental problems, but also

considered the defendant's long-term unwillingness to confront his problems with alcohol. In *Mott*, the court expressed no concern as to the rehabilitative potential of the defendant. Here, the court considered that question and expressed justifiable doubt as to defendant's rehabilitative potential. The sentence here was based on proper considerations, did not place too much emphasis on retribution, and was not a breach of discretion.

As we have indicated, we affirm both the conviction and the sentence.

Affirmed.

LUND, P.J., and McCULLOUGH, J., concur.