THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY C. THURMAN, Defendant-Appellant.

Third District   No. 3—90—0472

Opinion filed December 31, 1991.

John Anthony Palombi, of State Appellate Defender's Office, of Springfield, and Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant, Jerry Thurman, was charged in a six-count indictment with the first degree murder of Ronald Griffin (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)). The jury returned a general verdict of guilty but mentally ill. The defendant raises the following issues on appeal: (1) whether he proved by a preponderance of the evidence that he was legally insane; (2) whether he was properly charged with felony murder; and (3) whether his conviction of first degree murder should be reduced to second degree murder. We affirm.

The record shows that the defendant was a patient and resident at the Tazwood Center for Human Services, a mental health facility. He was diagnosed as suffering from paranoid schizophrenia. The vic-

tim, Ronald Griffin, was also a patient and resident at the Tazwood Center who had been diagnosed as suffering from schizophrenia.

On October 16, 1989, the defendant, Griffin, and other Tazwood Center patients attended a party at Tazwood's Day Treatment Center for defendant's former therapist who was leaving his employment at Tazwood. At approximately 11:30 a.m., the defendant and Griffin were involved in an altercation in the recreation room of the center. Griffin screamed in defendant's ear, and defendant hit Griffin on the chin. After the party, at approximately 1:30 p.m., the defendant was seen leading the victim away from the center with his arm around Griffin as if he were trying to keep him from falling down. Defendant took Griffin five or six blocks to a nearby park. Upon reaching the park, the defendant and Griffin engaged in a struggle during which the defendant killed Griffin by striking him on the side of the head with a blunt object and stabbing him twice in the chest and five times in the back.

At approximately 3:30 p.m., the defendant entered the Tazewell County sheriff's office. His clothes were stained with the blood of the victim. Defendant told a deputy sheriff that he had been in a fight and that the other person "may be dead." Defendant then handed the deputy a slide-out knife and said that he had used the knife to stab Ron Griffin. He told the deputy that the fight had started because Griffin threatened to kill him, his mother, and his girlfriend. Defendant showed the authorities where the body was located and was then taken to the Pekin police department.

At approximately 4 p.m., the defendant spoke with a Pekin police officer about the incident and said that he had fought with the victim and killed him. He said he was waiting for a chance to get the victim and that he "got the son-of-a-bitch." Defendant also told the police officer that the victim had psychic powers, was part of the "Jewish mafia," and had threatened to kill the defendant and his girlfriend.

Defendant then made a number of delusional statements to the police officer. He stated that he did not want his picture in the newspaper because there were people who could read minds through the retinae of the eyes. He said that he had once been kidnapped and brainwashed by Iranians armed with AK-47 assault rifles. He told the police officer that he occasionally worked for the sheriff's office and was conducting surveillance on an "Iranian trailer." Defendant stated that while he was watching the trailer, one of the Iranians shot at him. He said he then contacted a deputy who called in an air strike on the trailer, killing all the Iranians. Defendant related a number of similar delusional stories to the police officer.

At trial, defendant raised the affirmative defense of insanity. The jury returned a verdict of guilty but mentally ill on the charge of first degree murder. Defendant was sentenced to 23 years' imprisonment. This appeal followed.

We first address defendant's contention that he proved by a preponderance of the evidence that he was not guilty by reason of insanity. Defendant argues that he presented sufficient evidence for the jury to have found that he suffered from a mental disease which substantially impaired his ability to appreciate the criminality of his conduct. When a defendant raises the affirmative defense of insanity, he must show by a preponderance of the evidence that he was legally insane at the time of the offense. (Ill. Rev. Stat. 1989, ch. 38, par. 6—2(e).) Section 6—2 of the Criminal Code of 1961 provides in relevant part:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

\* \* \*

(c) A person who, at the time of the commission of a criminal offense, was not insane, but was suffering from a mental illness, is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill.

(d) For purposes of this Section, 'mental illness' or 'mentally ill' means a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1989, ch. 38, par. 6—2.)

The issue of a defendant's sanity at the time of the offense is generally a question of fact, and a jury's finding on that issue will not be disturbed unless it is contrary to the manifest weight of the evidence. *People v. Janecek* (1989), 185 Ill. App. 3d 89, 540 N.E.2d 1139.

At trial, the defense presented the testimony of a number of employees of the Tazwood Center who testified concerning the defendant's various delusions and hallucinations. Defendant's mother and stepfather testified that the defendant had been having delusions and fears about the "Jewish Mafia" and the "Iranians" for a number of years. Defendant's mother also testified concerning the defendant's history of extensive treatment for mental illness. She gave numerous

accounts of defendant's episodes of hallucination and stated that he claimed to have been "hearing voices" since high school.

The defense also called two expert witnesses. The first was Dr. Robert Chapman, a licensed psychiatrist. Chapman testified that approximately three months after the offense he interviewed the defendant and reviewed his psychiatric and medical history. During the interview, defendant told Chapman of his fears concerning the "Jewish Mafia" and the "Iranians" and claimed that Ron Griffin had been "out to get him." The defendant gave Chapman the following account of the events of October 16, 1989:

> "At the party, I went downstairs to the kitchen. Ron came down and was loud and boisterous and said he was glad Rick [defendant's former counselor] was leaving and was going to leave and bumped into me and I hit him. Ron looked at me hard and threatened me with 'be careful as you walk away or else.'

> Ron left to go to the Shell station to make a phone call to call the Jewish mafia in Chicago. I walked up behind him to check his back for his small handgun. Ron hit me in the elbow and I hit him three times and I picked up Ron by the arm and said we are going to talk and took him to the Gene Miller Park by the river.

> I accused him of shooting someone. He said snide remarks about Romela [defendant's former girlfriend]. ***

> I asked him why he came here from Chicago, why did he come down here and cause trouble. I became angry because I knew Ron was lying to me because Frank was helping me with another vision. I saw Ron shoot a man in front of a yellow house. We walked and talked. I kept asking questions and Ron kept saying, 'I don't know.'

> The night before I heard someone say that Ron did shoot Romela and that is why I killed him. I believe Ron killed Romela."

Chapman concluded that the defendant suffered from schizophrenia. He stated that this disease substantially impaired the defendant's capacity to appreciate the criminality of his behavior. Specifically, Chapman testified that on the date of the offense, the defendant was in a state of psychosis and was suffering from a delusion that Ron Griffin had killed defendant's girlfriend and posed a danger to him and his family. These beliefs, according to Chapman, motivated the defendant to kill Griffin and feel he was justified in doing so.

The second defense expert was Ted Mathews, a psychologist. He testified that he reviewed Chapman's files and interviewed the defendant. Mathews agreed with Chapman that the defendant had a mental disorder which substantially impaired his capacity to appreciate the criminality of his conduct.

The State presented the testimony of six lay witnesses in rebuttal. Five of the witnesses were police officers who spoke with the defendant shortly after the offense. Each testified that the defendant seemed calm and rational. The sixth witness, the defendant's therapist, testified that he had spoken with the defendant a few hours before the killing. It was his opinion that, at that time, the defendant was able to conform his conduct to the law and could appreciate the wrongfulness of killing another person.

The defendant contends that the uncontradicted expert testimony was sufficient to establish that he was legally insane at the time of the offense. The State argues that there was other evidence which the jury could rely on to reject the defense experts' conclusions and find that the defendant was able appreciate the criminality of his conduct. Specifically, the State points to: (1) the fact that the defendant led Griffin to a somewhat secluded area before killing him; (2) that the defendant turned himself in to the police; (3) the defendant's statements to the police that he had "finally got" the victim; and (4) the testimony of the State's rebuttal witnesses that the defendant was calm and rational both before and shortly after the offense.

■ A jury need not accept the conclusions of a psychiatrist and may properly reach a finding of sanity by accepting lay testimony over expert testimony. (*People v. Uppole* (1981), 97 Ill. App. 3d 72, 78, 422 N.E.2d 245, 248-49.) Moreover, a jury may accept an expert's opinion that the defendant was mentally ill at the time of the offense and simultaneously reject that expert's conclusion that the defendant was legally insane. (*People v. Hood* (1990), 203 Ill. App. 3d 289, 560 N.E.2d 1187.) After weighing the evidence and the credibility of the witnesses in this case, the jury determined that the defendant had failed to prove by a preponderance of the evidence that he was legally insane at the time of the killing. There was sufficient evidence upon which the jury could rely to reject the conclusions of the defense experts. We find that the jury's determination was not against the manifest weight of the evidence.

■ Defendant next contends that his conviction must be reversed and remanded because he was improperly charged with felony murder. Under the felony murder rule, a person who kills another individual without lawful justification commits first degree murder if, in per-

forming the acts which cause the death, he is attempting or committing a forcible felony other than second degree murder. (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(3).) To be convicted of felony murder, the accused need not have intended to kill or even know that his acts will cause death or great bodily harm to the victim. (*People v. O'Neal* (1984), 104 Ill. 2d 399, 472 N.E.2d 441.) Count VI of the indictment charged the defendant with killing the victim during the commission of an aggravated battery. Under Illinois law, aggravated battery is a forcible felony. Ill. Rev. Stat. 1989, ch. 38, par. 2—8.

Defendant argues that a charge of felony murder cannot be based on aggravated battery. Because every murder involves an aggravated battery, defendant argues that every murder could be charged as felony murder, and defendants would be precluded from proving mitigating factors to reduce first degree murder to second degree murder. Therefore, defendant contends that the aggravated battery should merge into the murder as a lesser included offense.

While we find merit in defendant's argument, our supreme court has specifically held that a charge of felony murder can be based on aggravated battery. (*People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903.) The court in *Viser* held that the felony murder statute is intended to deter the commission of certain enumerated forcible felonies including aggravated battery.

> "[W]e are not concerned with whether the General Assembly, in establishing the offense of felony murder, intended to deter the criminal from the commission of rape, or robbery, or burglary, but not to deter him from the violent assault that accompanies each of those offenses. That kind of fragmentation of legislative purpose cannot survive the forthright characterization of aggravated battery as one of the forcible felonies that will trigger a charge of felony murder. What was intended was to deter the commission of any of the enumerated forcible felonies, including aggravated battery, by holding the perpetrator responsible for murder if death results." (*Viser*, 62 Ill. 2d at 580.)

Therefore, in light of the court's holding in *Viser*, we reject defendant's argument that felony murder cannot be based on aggravated battery.

Even if we were to find that the defendant was improperly charged with felony murder, his conviction would still stand. Defendant was charged with six counts of murder. Five counts charged the defendant with intentionally or knowingly killing the victim (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1(a)(1), (a)(2)) and one count charged him

with felony murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(3)). The jury returned a general verdict of guilty but mentally ill. It is well settled that a defendant convicted by a general verdict is guilty of any good count in the indictment to which proof is applicable. (*People v. Brackett* (1987), 117 Ill. 2d 170, 510 N.E.2d 877; *People v. Baker* (1984), 127 Ill. App. 3d 565, 469 N.E.2d 602.) The jury's general guilty verdict indicates an intention to convict the defendant of first degree murder under sections 9—1(a)(1) and 9—1(a)(2), as well as felony murder under section 9—1(a)(3). Defendant's conviction would stand based on the five counts properly charged.

■ Finally, defendant contends that his conviction of first degree murder should be reduced to second degree murder. He claims that he proved by a preponderance of the evidence that he had an unreasonable belief that he was justified in killing Griffin. The offense of first degree murder is defined in section 9—1 of the Criminal Code of 1961 in relevant part as follows:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than second degree murder." (Ill. Rev. Stat. 1989, ch. 38, par. 9—1.)

The offense of second degree murder is defined in section 9—2 (Ill. Rev. Stat. 1989, ch. 38, par. 9—2) in relevant part as follows:

"(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and either of the following mitigating factors are present:

***

(2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."[1]

---

[1]Article 7 provides in relevant part that a person "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." Ill. Rev. Stat. 1989, ch. 38, par. 7—1.

The difference between first and second degree murder is the mental state of the offender. In the case of second degree murder, the offender believes, albeit unreasonably, that his use of deadly force is necessary to prevent imminent death or great bodily harm while in the case of first degree murder the offender has no such belief. (*People v. Denson* (1985), 139 Ill. App. 3d 914, 487 N.E.2d 777.) Once the State has proven the elements of first degree murder beyond a reasonable doubt, the burden shifts to the defendant to prove by a preponderance of the evidence that he had such a belief in order to reduce the offense from first degree to second degree murder. (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(c).) This court will not overturn a jury's finding that the defendant failed to establish a mitigating factor unless that finding is clearly contrary to the manifest weight of the evidence. *People v. Newbern* (1991), 219 Ill. App. 3d 333, 579 N.E.2d 583.

In *People v. Purdle* (1991), 212 Ill. App. 3d 594, 571 N.E.2d 178, this court was presented with a similar request to reduce defendant's conviction from first degree murder to second degree murder. In declining to do so, we held:

"[T]he current statutory scheme for homicide does not readily lend itself to reductions in degree by this court from murder in the first degree to murder in the second based on an imperfect self-defense (unreasonable belief that lethal force is justified). While there was certainly *some* evidence of defendant's unreasonable belief, we do not find that such evidence clearly outweighed the State's evidence indicating that no such mitigating factor existed at the time of the killing. Accordingly, we will not disturb the judgment of conviction as entered by the circuit court of Peoria County." (Emphasis in original.) *Purdle*, 212 Ill. App. 3d at 600, 571 N.E.2d at 182.

Similarly here, there was some evidence of defendant's unreasonable belief that self-defense was necessary. He told the police that at the time of the offense Griffin had threatened to kill him. He also told Dr. Chapman and others that he believed the victim was a threat to his family and had killed his girlfriend. However, the evidence of defendant's unreasonable belief did not clearly outweigh the State's evidence indicating that no such mitigating factor existed at the time of the killing. The State established that the defendant carried a knife and took Griffin, who was unarmed, to a somewhat secluded area, where he stabbed and beat him to death. The jury could conclude that the defendant did not believe, even unreasonably, that he was in imminent danger of death or great bodily harm when he killed his victim.

We find that such a determination was not against the manifest weight of the evidence. Furthermore, the jury may have found the defendant guilty under the felony murder rule in which case he was properly convicted of first degree murder without consideration of any factors in mitigation.

For the reasons stated above, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY and McCUSKEY, JJ., concur.