THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JONATHAN WEST, Defendant-Appellant.

First District (4th Division)   No. 1—91—1842

Opinion filed June 30, 1992.

James A. Graham, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

After a bench trial defendant Jonathan West was found guilty but mentally ill on charges of attempted aggravated criminal sexual assault, attempted criminal sexual assault, aggravated kidnapping and aggravated battery and was sentenced to 12 years in prison. Defendant contends that the trial court's finding that he was guilty but mentally ill was against the manifest weight of the evidence, and the trial court utilized an improper standard in finding him guilty but mentally ill.

The victim testified that at 9 p.m. on May 12, 1990, she was walking home from a drugstore in her neighborhood when she noticed defendant following her. Defendant approached her and asked her if she knew the time. Defendant then came from behind her, placed his arms around her neck and pulled her into a parking lot. Defendant told her that he was going to kill her. She testified that she fell and

defendant then dragged her, head first, into some bushes. She attempted to resist him, but he pulled her farther into the bushes. Defendant appeared to be carrying a weapon and threatened to kill her a second time. A struggle ensued with defendant unsuccessfully attempting to remove the victim's clothes. During the altercation, the victim heard passersby and, after pulling defendant's hand from her mouth, was able to call for help. Defendant immediately fled. Two men who had heard the victim's call for help pursued defendant. The victim ran home, where she telephoned the police. When the police arrived, she saw defendant lying in the street and identified him as her assailant.

Juan James testified that he and several friends were walking past the location of the incident when he heard someone calling for help. Looking in the direction of the voice, he saw defendant on top of the victim in an empty lot. He observed defendant and the victim struggle, and defendant appeared to be trying to choke her. James ran toward the defendant, who fled, and then assisted the victim. After determining that she was in good condition, he pursued defendant, caught him and held him for police. Defendant resisted him and shouted at him that he was sorry.

Chicago police officer William Galvan testified that he arrived at the scene of the incident shortly after it occurred. After taking statements from the witnesses, he gave defendant *Miranda* warnings. Defendant stated that he understood his rights, did not appear to have any difficulty understanding the officer, and the officer found him to be coherent. The police transported defendant to a hospital because defendant indicated that he was injured.

Dr. Gerson Kaplan, a psychiatrist, testified that he examined defendant on August 1, 1990, and determined that he was schizophrenic and unfit to stand trial. During his initial examination defendant was hyper, alert, suspicious and displayed severe thought disorder. When defendant spoke he made no sense. The doctor testified that defendant was a candidate for involuntary admission to a State mental hospital. He explained that a person suffering from a schizophrenic paranoid disorder may be lucid, able to understand what is happening in his environment, and able to answer simple questions regarding age and address. He noted that it was possible for such an individual to realize that he was committing an offense. The doctor examined defendant again on February 21, 1991, and determined he was legally insane at the time of the incident. He based his diagnosis on defendant's medical history of three hospitalizations for mental illness prior to the incident, the last of which occurred only several

weeks prior to his arrest, and the nature of the arrest incident. On cross-examination, Dr. Kaplan testified that he interviewed defendant for the first time three months after the incident. He further stated that defendant's medical history indicated that he was first diagnosed as having an adjustment disorder which would not have rendered defendant either mentally ill or insane. He stated that it was logical to assume that defendant's apology after the incident was an effort of a normal person to tell someone he was sorry for the act committed.

Dr. Albert Stipes, a psychiatrist, testified that he evaluated defendant on November 21, 1990, and found that with medication, he was fit to stand trial. He diagnosed defendant as a paranoid schizophrenic, meaning that defendant was confused, illogical, believed others were trying to harm him and had a thought disorder. Dr. Stipes evaluated defendant again on January 2, 1991, and found defendant was legally insane at the time the incident occurred. His diagnosis was based on defendant's previous examinations and police reports, as well as the examinations conducted by Dr. Kaplan and himself. He also testified that a person suffering from this illness can commit an offense and immediately express remorse, and may be able to know his name and address. On cross-examination, Dr. Stipes stated that a paranoid schizophrenic is able to commit a crime and know he is committing a crime without being legally insane. He also testified that he made his evaluation without interviewing any witnesses to the incident or without talking with any other psychiatrists who had treated defendant. He testified that some paranoid schizophrenics may live a normal life without medication. He also stated that the disorder could be triggered by stress, such as committing a crime and being caught. The doctor testified that a normal person apprehended after committing a crime would demonstrate his knowledge of his wrongdoing by apologizing. Finally, he stated that it was highly likely that defendant, who had a high potential for violence, would repeat the type of behavior.

Police officer William Marley testified that at 10:30 p.m. on May 12, 1990, he went to Roseland Hospital to interview defendant. He advised defendant of his *Miranda* rights and defendant indicated that he understood his rights. Defendant told the officer that he had been involved in a fight with a girl on the street, they had fallen to the ground during the fight and he did not know how her bra and pants had become opened. Defendant also told him that he was not aware of how he came to be on top of the victim. Defendant said that he had a dispute with her former boyfriend in 1986 and this was his act of revenge.

In finding defendant guilty but mentally ill, the trial court stated:

"The Court is aware of the testimony of the two doctors[;] however, the Court finds particularly seeing the testimony of the lay witnesses which indicate[s] that the Defendant followed the complainant, that he concealed their presence by pulling her into bushes, that he was responsive to a statement made by the complainant, that he attempted to avoid detection by the citizens who arrived on the scene, that he fought back. The Court notes the citizens' opinion that there was nothing unusual about the Defendant. The Court also notes that the Defendant was remorseful after his arrest as a response to warnings and to personal questions that were presented to him, he appeared to be lucid after his arrest and there was no evidence of bizarre conduct.

Based on all these factors the Court finds that he had substantial capability to appreciate the criminality of his conduct and to conform his behavior to the requirements of the law."

■ Defendant contends that the trial court's finding of guilty but mentally ill was against the manifest weight of the evidence. Initially the State contends that defendant waived this issue on appeal by failing to raise it either at trial or in a post-trial motion. However, in Illinois a defendant is not required to have objected at trial or filed a post-trial motion if he is challenging the sufficiency of the evidence. *People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124.

■■ Section 6—2(a) of the Criminal Code of 1961 states:

"[a] person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1989, ch. 38, par. 6—2(a).)

Where a defendant raises the affirmative defense of insanity, he bears the burden of proving by a preponderance of the evidence his insanity at the time of the offense. (*People v. Williams* (1990), 201 Ill. App. 3d 207, 216, 558 N.E.2d 1258.) "Unless it is contrary to the manifest weight of the evidence, the fact finder's resolution of the issue of defendant's sanity at the time of the offense will not be disturbed upon appeal." (*People v. Beehn* (1990), 205 Ill. App. 3d 533, 539, 563 N.E.2d 1207, 1211.) "The weight to be given an expert's opinion on sanity is measured by the reasons given for the conclusion and the factual details supporting it." (*People v. Wilhoite* (1991), 228 Ill. App. 3d 12, 20-21.) A trier of fact may reject all expert testimony and conclude a defendant was sane based solely on lay testimony. (*People v.*

*Williams*, 201 Ill. App. 3d at 219.) Lay observations are particularly relevant if they are based on observations made shortly before or after the crime was committed; other relevant factors include the existence of a plan for crime and methods to prevent detection. 201 Ill. App. 3d at 219.

In the case at bar, the expert testimony showed that although Drs. Kaplan and Stipes believed defendant was insane at the time the offense occurred, neither of them examined him until several months after the attack. Dr. Stipes testified that it was possible for a paranoid schizophrenic to commit a crime, understand he committed a crime and be legally sane. He further stated that defendant's disorder could be triggered by stress, such as committing a crime and being caught. The lay witnesses who observed defendant before, during and immediately after the attack all testified that defendant appeared normal, coherent and remorseful. Further, the evidence indicated that defendant had planned to attack the victim and then took her to a secluded area to prevent detection.

Accordingly, we find that the evidence supported the trial court's conclusion that defendant was sufficiently lucid at the time of the incident to know that he was committing a crime and to have the capability of conforming his behavior to the requirements of the law.

Defendant next contends that the trial court erred in requiring him to prove his insanity beyond a reasonable doubt. At trial the trial court stated:

> "The court has resolved the conflict of the evidence, and the credibility issues that have been presented. It's clear that the State proved all offenses charged beyond a reasonable doubt. And from all the circumstances find beyond a reasonable doubt that the Defendant was not insane at the time of the incident."

However, contrary to defendant's assertion, we find the trial court's comments pertain to the State's having met its burden of proof and do not refer to any burden of proof that was required of defendant. We find no evidence in the record to support defendant's contention that the trial court required him to prove his insanity beyond a reasonable doubt.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.