THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEBORAH GILMORE, Defendant-Appellant.

First District (4th Division)   No. 1—93—3995

Opinion filed June 30, 1995.

THEIS, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Robert Drizin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Latisha Foster, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a bench trial, defendant Deborah Gilmore was found guilty but mentally ill of residential burglary. She was sentenced to four years in the Department of Corrections with a recommendation that she receive treatment from the Illinois Department of Mental Health and Developmental Disabilities. On appeal, defendant contends that she was not proven guilty beyond a reasonable doubt. We affirm.

About 11:45 a.m. on November 25, 1992, Zachary Jones arrived at his Chicago residence. He entered the basement, saw no one and nothing unusual, noticed a window facing the backyard was broken, and then went outside the house. There, he saw a piece of wood by the window and called the police.

The police arrived, inspected the premises and left. After they left, Jones returned to the basement and boarded the window to keep out the cold air. Upon entering a storage room, he saw "a mess" on the floor near the furnace and a cake his wife had baked for Thanksgiving. He described the "mess" as human excrement.

Jones went upstairs to get something to clean it. When he returned, he saw it had been cleaned. Then, he noticed defendant lying near the furnace with a blanket over her. Jones also found some shoes, a watch, a wallet and some coins on top of the blanket near her. She was not sleeping. Jones grabbed her by the arm, took her upstairs and called the police.

Before the police arrived, Jones asked defendant why she broke in, and she answered, "She was homeless. Didn't have anyplace to

go." It was later determined that the wallet belonged to his mother-in-law and was normally kept in her bedroom.

At trial, the defense presented two court-appointed expert witnesses, Dr. Roni Seltzberg and Dr. Albert Stipes. The prosecution stipulated to the qualifications of both psychiatrists as expert witnesses concerning the issue of sanity.

Dr. Seltzberg testified that she examined defendant on two occasions (February 23, 1993, and March 24, 1993). Prior to these examinations, she reviewed defendant's extensive medical records, which dated to the mid-seventies and involved multiple psychiatric hospitalizations and evaluations over the years. After each examination, it was her opinion that defendant was suffering from a chronic psychotic disorder known as schizophrenia. Dr. Seltzberg opined that "because of her mental disease she [defendant] was unable to appreciate the criminality and unable to conform her conduct to the requirements of the law based on that mental illness." Dr. Seltzberg stated that to a reasonable degree of medical and psychiatric certainty defendant was mentally ill and legally insane at the time of the alleged offense.

Dr. Seltzberg stated that at the time of her interviews defendant understood she was in custody and was facing punishment as a result of her actions on this occasion. Dr. Seltzberg stated that although it was possible defendant could have been malingering, she did not believe defendant was doing so or defendant would have exaggerated psychotic symptomatology. In this case, defendant denied hallucinations and delusions. Dr. Seltzberg stated that fleeing the scene of the crime or concealing herself under the blanket would be factors to consider as to whether defendant was insane or malingering. Dr. Seltzberg, however, did not believe defendant was malingering because at the time she had the opportunity to leave through the window she had allegedly entered, she did not leave.

Dr. Stipes examined defendant on April 22, 1993. Prior to this examination, he reviewed her prior psychiatric records, the police reports and Dr. Seltzberg's report on defendant. Following the examination, Dr. Stipes opined that defendant had schizophrenia, undifferentiated type, and that because of this disease she lacked the substantial capacity to appreciate the criminality of her conduct. He further opined that at the time of the offense she was legally insane.

Dr. Stipes determined defendant was not malingering, although she was found hiding under a blanket in the basement near a furnace. Dr. Stipes told the court that it did not affect his opinion in this case that the escape route where she was apprehended had been boarded to prevent her exit or that the stolen items were from different loca-

tions in the home. Dr. Stipes stated that the fact that stolen items were found would indicate an attempt to commit the offense of theft if in fact they were stolen. Dr. Stipes stated that he did not know if that was her intention since in his opinion she was psychotic at the time and she could have any type of reason for gathering the items.

The court concluded, based upon the uncontradicted testimony, that defendant was suffering from a mental disease or defect. It determined the issue to be whether defendant lacked the substantial capacity to appreciate the criminality of her conduct and to conform her conduct with the law as required by Illinois statutes. The court found that "the testimony of the two doctors must be given serious consideration; however, it must be evaluated along with the facts of the case."

The court found that defendant had removed the items from other locations in the premises and was unable to escape because the window was boarded. The court found that her denial of any statement to others was a factor to be considered in determining whether she was insane at the time of the alleged offense. The court determined, based upon all the evidence, that defendant was not insane at the time of the offense. The court found that defendant was mentally ill at the time of the offense despite the testimony of the doctors.

In denying defendant's motion for a new trial, the court said it carefully weighed the testimony of the doctors with the facts of the case and concluded the facts were inconsistent with their opinions that defendant was insane at the time of the offense. Specifically, the court referred to the stolen property found near defendant, her concealment of her whereabouts in the home until she was discovered by the occupant, her inability to escape because the window was boarded and the statement she made. The court acknowledged the doctors' opinion that she was legally insane at the time of the offense but persisted in its finding that defendant was guilty but mentally ill at the time of the offense.

On appeal, defendant contends that the trial court's finding of guilty but mentally ill was manifestly erroneous after a consideration of all the evidence.

■ Under section 6—2 of the Criminal Code of 1961, a person is not responsible for his conduct if "at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (720 ILCS 5/6—2(a)(West 1992).) The defense of insanity is an affirmative one which the defendant has the burden of raising and proving by a preponderance of

the evidence. (*People v. West* (1992), 231 Ill. App. 3d 646, 596 N.E.2d 740.) The issue of defendant's sanity is one of fact and the trier of fact's determination on that issue will not be reversed unless it is contrary to the manifest weight of the evidence. *People v. Thurman* (1991), 223 Ill. App. 3d 196, 201, 584 N.E.2d 1069.

■ The State need not present expert testimony on the issue of defendant's sanity but instead may rely on facts in evidence and the inferences which can be drawn therefrom. (*People v. Baker* (1993), 253 Ill. App. 3d 15, 27, 625 N.E.2d 719.) The fact that a defendant engaged in unusual behavior or made bizarre or delusional statements does not compel a finding of insanity, and a defendant may suffer from a mental illness without being legally insane. *People v. Fierer* (1994), 260 Ill. App. 3d 136, 631 N.E.2d 1214.

■ The relative weight to be given an expert witness' opinion "is measured by the reasons given for the conclusion and the factual details supporting it." (*People v. Wilhoite* (1991), 228 Ill. App. 3d 12, 20-21, 592 N.E.2d 48.) The trier of fact may determine the issue of sanity solely on the basis of the opinion of lay witnesses if such opinions are based upon the personal observations of the defendant. (*People v. Kluxdal* (1991), 225 Ill. App. 3d 217, 586 N.E.2d 701.) Lay opinions are particularly relevant if they are based on observations made shortly before or after the occurrence of the crime. (*People v. Williams* (1990), 201 Ill. App. 3d 207, 219, 558 N.E.2d 1258.) Other relevant factors in determining whether a defendant was sane at the time of the offense include the plan for the crime and methods to prevent detection. *People v. West*, 231 Ill. App. 3d at 651.

■ In this case, the trial court gave reasons for rejecting the testimony of the two expert witnesses. First, neither could substantiate the basis for their determination that defendant was not malingering other than she would have acted or exaggerated her psychotic symptoms. Both doctors failed to adequately consider that defendant was hiding and had no escape after the window was boarded. This was not a case where each expert witness interviewed defendant over an extended period of time or often. Dr. Seltzberg examined defendant on only two occasions, several months after the incident, and Dr. Stipes examined defendant thereafter only once.

Defendant relies upon three cases (*People v. Arndt* (1980), 86 Ill. App. 3d 744, 408 N.E.2d 757; *People v. Garcia* (1987), 156 Ill. App. 3d 417, 509 N.E.2d 600; *People v. Janecek* (1989), 185 Ill. App. 3d 89, 540 N.E.2d 1139) where all the psychiatric examinations took place within two days or three weeks from the time the crime was committed. Here, the testimony of the lay witness and circumstances of the case directly refuted the opinions given by the psychiatrists.

Defendant's lack of a delusional response at the time of the crime supported the findings of the trier of fact that she was not insane but mentally ill. In this case, the trial court carefully weighed the expert testimony and rejected it in light of defendant's behavior and the lay witness' testimony.

In finding defendant sane but mentally ill, the court noted the following: (1) the presence of stolen property surrounding defendant; (2) her concealment of her whereabouts in the basement of the house until she was discovered by an occupant; (3) her inability to escape after the window was boarded; and (4) her statement made immediately after she was found by the occupant. We cannot ignore the wallet and cake taken from the house by defendant, her conscious effort to conceal herself by cleaning the human excrement before the occupant returned to the basement and her hiding under a blanket behind a furnace. Upon these facts, we are unable to conclude that the trier of fact's finding was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court is affirmed. As part of this judgment, we assess defendant $100 as costs for this appeal.

Affirmed.

CAHILL, J., concurs.

JUSTICE THEIS, dissenting:

Deborah Gilmore is a woman with a 20-year history of mental illness. She has been hospitalized in psychiatric institutions on multiple occasions and has been evaluated by the Psychiatric Institute of the Circuit Court of Cook County many times. Here, two psychiatrists from the Institute examined her three more times. Both found that she was insane at the time of the crime.

The trial court rejected the experts' opinions, stating they were inconsistent with the facts of the case. However, the court misstated the testimony of the witnesses to reach its conclusion.

Most glaring was the court's statement that defendant "denied making a statement to the law enforcement people and to the citizens." A review of the record shows there is absolutely no testimony that defendant made such a denial. The only testimony of a statement came from Mr. Jones, who asked her why she broke into the house. Surely her reply that she was homeless and did not have any place to go cannot be construed as a false statement to authorities.

The trial court also found the fact defendant was unable to escape through the boarded window inconsistent with the doctors' opinions. Dr. Seltzberg testified that an attempt to flee was a consideration in determining whether defendant was insane or malingering. From that opinion, the trial court determined that if an attempt to flee was significant, the impossibility of flight also indicated malingering. This is circular reasoning. Defendant made no attempt to flee which either indicates she was not malingering or it means nothing at all.

The majority finds that the trial court carefully weighed the evidence despite these obvious errors by the trial court. Additionally, the majority finds support for the trial court's findings from facts the court never relied upon. First, the majority determines the lack of delusional response by defendant supports the trial court's findings. However, the only expert opinion in the record interpreting lack of delusions was offered by Dr. Seltzberg. She found defendant's denial of delusions indicated she was not exaggerating symptoms and therefore was significant in ruling out the possibility of malingering. Despite this expert testimony, the majority uses the same evidence to come to the opposite conclusion.

The majority also raises the issue that the doctors examined defendant several months after the event. The record shows defendant requested an examination at the first opportunity after counsel was appointed to represent her. After the report reflecting the doctor's opinion that defendant was legally insane was filed, the court requested another exam. When the second report contained the same opinion, the court ordered a third examination by a different doctor. Because both doctors reviewed records of defendant's extensive mental illness, I do not believe the delay in their examinations lessened the reliability of their opinions.

The trial court's determination that defendant was sane despite the unrebutted testimony of two experts was against the manifest weight of the evidence actually presented at trial. Deborah Gilmore was found next to a furnace in a cold basement in November surrounded by half-eaten food and her own feces. Nothing in this record suggests she was anything else but a homeless, hungry, insane woman. I would reverse her conviction for residential burglary.