FIRST DIVISION

                   November 22, 1999

No. 1-97-2005

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

FREDERICK LUCKETT,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Stanley Sacks,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Frederick Luckett was charged with first degree murder, three counts of attempted first degree murder and three counts of aggravated discharge of a firearm.  Codefendants Robert Foster and Donald Toney were also charged with these crimes, but were tried in separate jury trials and are not involved in this appeal.

The jury found Luckett guilty of first degree murder of Phillip Matthews, aggravated discharge of a firearm and attempted first degree murder of Bobby Roberson, and aggravated discharge of a firearm of Antoine Harris.  The jury found defendant not guilty of attempted murder of Antoine and Terrance Harris and not guilty of aggravated discharge of a firearm of Terrance Harris.  Luckett was sentenced to 28 years in prison for the first degree murder conviction to run consecutive with three concurrent 10-year sentences for the attempted first degree murder and aggravated discharge of a firearm convictions.  

Luckett raises only one issue on appeal.  Luckett contends the judge erred by failing to instruct the jury on the charged offenses of intentional and knowing murder and on the lesser mitigated offense of second degree murder. We find sufficient evidence in the record to require the jury be instructed on second degree murder.  We reverse and remand for retrial.  

FACTS 

At approximately 7 p.m. on the evening of October 10, 1995, 9 or 10 members of the Four Corner Hustlers street gang, including Antoine Harris and his brother Terrance Harris, observed a car drive east past Halsted on 123rd Street.  Antoine recognized the driver of the car as Toney.  Toney and his passengers, Foster and Luckett, were members of the Gangster Disciples street gang.   A confrontation occurred during which at some point threats were yelled, Antoine threw a bottle at Toney's vehicle and shots were fired.  Foster and Luckett fired their weapons, a 9 millimeter handgun and a rifle.  While Bobby Roberson, Antoine and Terrance were not injured, Phillip Matthews died from gunshot wounds.  Antoine gave Chicago police officers information that led them to 123rd and Carpenter, where Toney lived and where the officers eventually discovered Toney's vehicle, which matched the description of the vehicle involved in the shooting.  A neighbor told the officers that the vehicle belonged to the boys from 12320 South Carpenter.   

As Officer Kane approached 12320 South Carpenter he saw an individual who matched the description of one of the offenders and arrested him.  This individual was later identified as Luckett.  Luckett is Toney's younger brother.  Officer Kane told Luckett's mother that he noticed two individuals run into the house at 12320 South Carpenter.  She went into the house and returned first with Foster, and then with Toney, and both were arrested.  Police officers accompanied by Luckett later recovered the two guns.  A forensic expert who examined 15 fired cartridge casings concluded the casings recovered from the scene were consistent with the two recovered weapons; however, the three fired bullets, including one .38-caliber bullet recovered from the body of Phillip Matthews, could not have been fired from the two recovered weapons.       Luckett first told the police he was not involved in the shooting, but after being identified in a lineup by Antoine he admitted his involvement.  He stated that he and Foster went with Toney to see Toney's girlfriend, who lived in Four Corner Hustler territory.  Luckett stated that Toney recently "got into it" with some Four Corner Hustlers while in his girlfriend's neighborhood.  Before getting into Toney's car, Luckett stated that he went into his house and obtained a rifle and a 9 millimeter handgun.  

Luckett in his statement to the police further stated that, near the corner of Halsted and 123rd, he heard people yelling "GDK," which means "Gangster Disciple Killers," and the group threw a few bottles at the car. Luckett said that he and the other defendants were "mad" about the group of Four Corner Hustlers yelling and throwing bottles, so they stopped the car, took the guns, and exited the vehicle.  When Luckett looked in the direction of where the bottle had come from, he saw two Four Corner Hustlers who had shot at Toney the previous week.  Luckett stated that Foster shot the 9 millimeter handgun in the direction of the group, and Luckett tried to shoot the rifle, but was unable to remove the safety.  He said that he and Foster then switched guns, and Foster shot at the group with the rifle.  Toney brought Foster and Luckett along for protection, and Toney knew Luckett and Foster brought guns with them.  Luckett said he saw Foster take several shots with the rifle back toward 123rd Street and saw a man fall down.  Luckett then jumped over a fence and Foster handed him both guns.  Luckett later accompanied Detective McDermott to the house in which he had placed the guns.  The detective found the two guns under the mattress.

At trial Luckett denied any plan to kill Four Corner Hustlers and maintained he and Foster fired their weapons in self-defense.  Luckett described two previous confrontations with the Harris brothers.  Luckett testified that, in March of 1995, he was with his brother Toney, Foster and his friend Palmer Helm, when Antoine, Antoine's brother, and Bobby Roberson confronted them.  Luckett stated that Antoine, Antoine's brother and Bobby Roberson shouted "GDK" at them and Antoine shot Palmer Helm, who went to the hospital.  Luckett testified about a second confrontation.  He stated that on October 6, 1995, Toney told him that, after visiting with his girlfriend, he was chased by Antoine Harris.  Antoine shot at Toney and Toney went to the hospital.  

Luckett testified that on October 10, 1995, he, Foster and Toney were going to Toney's girlfriend's house.  They armed themselves with guns because of past confrontations with the Four Corner Hustlers and because they were afraid the Harris brothers might shoot at them.  Near Halsted and 123rd Streets, a mob of 10 or more men began to threaten them by yelling "GDK."  A Harris brother threw a bottle that broke out the driver's side window of Toney's car.  Luckett stated that the car stopped and he exited the vehicle with the rifle because he was scared he would be shot.  Luckett stated that while the Harris brothers and eight other men were coming at him and Foster, he saw the Harris brothers reach into their coats for their guns.  Luckett aimed the rifle into the air to scare the mob away, but the rifle failed to fire.  Luckett thought that the Harris brothers were going to kill him and Foster.  Luckett then heard several shots, and he and Foster ran away from the mob.  Luckett testified that the mob chased and shot at him and Foster and he feared for his life.  Foster returned fire until they jumped a fence and fled the area.  

On cross-examination, Luckett admitted he never told the police or the assistant State's Attorney about the Harris brothers reaching for weapons.  Luckett further admitted he later learned Toney had not been shot in the previous altercation.  

JURY INSTRUCTIONS

On appeal, Luckett contends that the trial court's failure to instruct the jury on the charged offense of first degree murder precluded the jury from receiving a second degree murder instruction and thereby denied him a fair trial.  Defense counsel offered instructions on the charged offense of first degree murder and on second degree murder.  Although felony murder had not been charged, the jury was given a felony murder instruction and a self-defense instruction.  The jury was not given an instruction for the charged offense of intentional, knowing murder or for the lesser mitigated offense of second degree murder.  The offense of aggravated discharge of a firearm served as the predicate felony for the felony murder instruction.  The prosecution maintains there was no evidence to support an instruction for second degree murder.  The question as to whether a defendant has met the evidentiary minimum for such an instruction is a matter of law.  
People v. Lockett
, 82 Ill. 2d 546, 553 (1980).  We review the trial court's refusal to issue tendered jury instructions under an abuse of discretion standard.  
People v. Kidd
, 295 Ill. App. 3d 160, 167 (1998). 

A. Sufficiency of Evidence to Require Second Degree Murder Instruction 

The United States Supreme Court has observed that, "[a]s a general proposition[,] a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  
Mathews v. United States
, 485 U.S. 58, 63, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 887 (1988).  A person commits second degree murder when he commits the offense of first degree murder and at the time of the killing he believes the circumstances to be such that, if they exist, would justify the use of deadly force under the principles of self-defense, but his belief is unreasonable.  720 ILCS 5/9-2(a)(2)(West 1996).  The factors we may consider in determining whether there is sufficient evidence of an unreasonable belief that self-defense was necessary thereby requiring a second degree murder instruction include but are not limited to the defendant's testimony, intent or motive, the type of wound suffered by the victim, any previous history of violence, any physical contact between the defendant and victim, and the circumstances surrounding the incident.  See 
People v. Everette
, 141 Ill. 2d 147, 158 (1990).  

Applying those factors we determine whether the evidence warranted an instruction on second degree murder.  Where as here the theory of self-defense is raised, evidence of the victim's aggressive or violent character is relevant (1) to show that defendant's knowledge of the victim's behavior and tendencies affected his perception of, and reaction to, the victim's actions and (2) to support the defendant's version of the facts where there are conflicting accounts of what happened.  
People v. Lynch
, 104 Ill. 2d 194, 199-201 (1984).  We note that Luckett's testimony described a recent history of previous shooting incidents with the Four Corner Hustlers where the Harris brothers were the aggressors.  Luckett portrayed the Harris brothers as the aggressors in this case. Luckett denied any plan to shoot rival gang members.  Luckett indicated a belief that circumstances existed that justified his use of deadly force.  Luckett's testimony repeatedly indicated fear for his life, contradicted the State's witnesses and provided evidentiary support for a second degree murder instruction. 

Luckett at trial described the previous shooting incident from March 24, 1995.  He was with his brother Donald Toney, and a friend Palmer Helm in Four Corner Hustler territory near 123rd and Halsted.  Antoine Harris, Bobby Roberson and another Harris brother threatened them by yelling GDK, which means "Gangster Disciple Killer," and began to fire their weapons at them, shooting Palmer Helm in the chest.  Bobby Roberson and Terrance Harris were charged in that shooting.  Luckett, in addition to that incident, described a shooting incident from four days before the shooting in this case.  The defendant stated that on October 6, 1995, his brother Toney told him that he had been chased and shot at by one of the Harris brothers after Toney came from his girlfriend's house.

Luckett testified that on October 10, 1995, he took guns with him when accompanying his brother Toney, who was going to see his girlfriend, because he was afraid the Harris brothers might shoot at them again.  When they drove across Halsted, the defendant saw and heard 10 or more men shouting the threat "GDK."  The defendant stated that his brother Toney stopped the car after one of the Harris brothers threw a bottle that hit and broke the driver's window of Toney's car.  Then the defendant and Foster got out of the car.  The defendant had a rifle in his hand.  At that point the defendant testified that the Harris brothers went into their coats to remove guns from their coats, and the Harris brothers and eight other men were coming at them.  The defendant aimed his rifle toward the air to scare them off.  The defendant maintained he was not trying to shoot anyone.  The defendant testified that he thought the Harris brothers were going to kill him and Foster.

State witness Antoine Harris, a convicted felon and rival gang member, in part corroborated Luckett's testimony.  Antoine admitted that on October 6, 1995, he and Toney, Luckett's older brother, had an argument.  Angry words were exchanged and Antoine was arrested as a result of that argument.  Antoine agreed with Luckett that the Gangster Disciples and the Four Corner Hustlers were rival gangs and he regarded Toney as an enemy.  Antoine further corroborated Luckett's version of the events in this case by admitting that he threw a bottle at Toney's car, that he jogged toward Toney's car, and that there were 9 or 10 Four Corner Hustler gang members in the area that night.  

State witness Officer Burrell in part corroborated Luckett's testimony regarding the Palmer Helm shooting from March 13, 1995.  Officer Burrell responded to the Palmer Helm shooting and corroborated the fact that Helm was shot, taken to Christ Hospital and that Roberson and Harris were charged.

At trial Luckett denied any plan to kill Four Corner Hustlers and maintained he and Foster fired their weapons in self-defense.  Other witnesses for the State similarly corroborated Luckett's version of what happened that night.  Bobby Roberson, another convicted felon and rival gang member, testified for the State that he heard about 30 gunshots fired that night.  His testimony also established that this incident took place in three different locations over a period of some time.  The fact that according to this witness there was gunfire coming from different locations corroborated the defendant's version of the incident that not only he and Foster fired weapons, but the Four Corner Hustlers exchanged gunfire.

The physical evidence corroborated Luckett's version of the confrontation.  The recovery of bullets from the scene and the .38-caliber bullet recovered from Phillip Matthews that did not match either the rifle or the 9 millimeter weapon fired by Foster and Luckett corroborated Luckett's testimony that weapons were fired by rival gang members at him.  Chicago police technician Warner, a State witness, testified that at least three and possibly four guns were responsible for the firearms evidence that he examined in connection with this shooting.  In 
People v. Thomas
, 185 Ill. App. 3d 1050 (1989), where a defendant testified he felt threatened and heard shots coming from the victim's direction, the court found sufficient evidence to warrant instructing the jury on voluntary manslaughter.  
Thomas
, 185 Ill. App. 3d at 1054.  

The State contends that because Luckett's testimony was impeached, no reasonable juror could find that Luckett unreasonably believed that he was justified in using deadly force.  The State presented a completely different theory of the shooting and portrayed Luckett along with his codefendants as the aggressors.  The State points out that charges against the Harris brothers for the previous shooting incident were eventually dismissed and Toney in fact never sustained any gunshot wound four days earlier.  The credibility of the defendant, like any witness, is a fact question for the jury to decide, and it may reject or accept all or part of the defendant's testimony.  
People v. Cosme
, 247 Ill. App. 3d 420, 428 (1993).  While defendant is entitled to an instruction where there is slight evidence in support thereof, this slight evidence must be evidence that a trier of fact could believe.  
People v. Everette
, 141 Ill. 2d 147, 156 (1990).  Even if inconsistencies exist in defendant's testimony, the defendant is entitled to the benefit of any defense and instruction supported by the entire evidence.  
People v. Bratcher
, 63 Ill. 2d 534, 540 (1976).
  The trial judge, "based on the entire evidence in the case," recognized that there were competing theories factually at issue in this case and found the defendant was entitled to an instruction on self-defense because that instruction was supported by the evidence:

"THE COURT:  If you use a broad view of self-defense, which the case law says if there's any evidence of self-defense, you have to give an instruction on that issue. ***  The jury if they want to accept it [sic] can believe there's some evidence of self-defense.  It's up to the jury to decide that issue.  There is some evidence regarding that particular issue.  So, I will give the self-defense instruction.  The State can argue that in their opinion there's no evidence that there's self-defense, the defense can argue that there is, and the jury will decide whether they believe there's self-defense in this case or not."

By giving the self-defense instruction the trial judge determined that the jury could conclude defendant acted in the subjective belief his conduct was in self-defense.  There was sufficient evidence in the record to support that determination.  When the evidence supports instructing the jury on self-defense, then a second degree murder instruction also should be given.   
People v. Lockett
, 82 Ill. 2d 546, 553 (1980).  

We note that later during the same instruction conference the trial judge refused to give the second degree murder instruction, not because the evidence did not support such an instruction, as clearly he had recognized support in the evidence for this theory of defense earlier in the instruction conference, but because he believed that, "There's no basis for second degree murder when there's a felony murder charge pending."  This is the same trial judge who two months earlier gave the jury in codefendant Foster's case both felony murder and second degree murder instructions. 

While second degree murder may not be based on felony murder it can be based on intentional or knowing murder.  Whether the court should instruct on the offense of second degree murder is to be determined by the evidence, not by the prosecution's choice to proceed against the defendant on a theory of felony murder.  We are aware of cases that have held that where the State prosecutes under a theory of felony murder an instruction on a lesser degree of murder is not warranted.  
People v. Weathers
, 18 Ill. App. 3d 338, 345-46 (1974).  Thus, if the jury finds that the murder was committed in the course of a forcible felony, it cannot find the defendant guilty of a lesser degree of murder.  
People v. Ellis
, 93 Ill. App. 3d 981, 984 (1981).  

In 
People v. Taylor
, 212 Ill. App. 3d 351 (1991), the court noted these cases and recognized that, while there are circumstances under which it would not be appropriate to instruct on felony murder and a lesser mitigated offense of murder, under the facts of the 
Taylor
 case the evidence warranted instructing on both felony murder and involuntary manslaughter.  
Taylor
, 212 Ill. App. 3d at 357.  In particular the 
Taylor
 court noted the evidence in that case which contradicted the State's evidence that the killing occurred in the course of a forcible felony.  Like 
Taylor
, in this case there is evidence that contradicts the State's evidence that the killing occurred in the course of the forcible felony of aggravated discharge of a firearm and supports the defense theory that the killing occurred as the result of defendant acting in self-defense.  There are competing theories of felony murder and second degree murder supported by conflicting evidence in this case. 

The committee notes to Illinois Pattern Jury Instructions, Criminal, No. 7.06A (3d ed. Supp. 1996) (hereinafter IPI Criminal 3d No. 7.06A (Supp. 1996))
 recognize that there can be competing theories supported by conflicting evidence where both felony murder and second degree murder instructions are warranted when belief of justifiable use of force is an issue.  These notes indicate that, "[p]ursuant to Section 9-2(a) * * * the offense of second degree murder may not be based upon first degree murder under Section 9-1(a)(3) (felony murder). * * * [However], [w]hen first degree murder under Section 9-1(a)(3) [(felony murder)] and first degree murder under Section 9-1(a)(1) or 9-1(a)(2) [(intentional, knowing murder)] are both charged and the court is also instructing on the lesser offense of second degree murder, Instruction 7.02A should be used for the count under Section 9-1(a)(3), and Instruction 7.06A should be used for the other first degree murder counts upon which second degree murder may be based."  IPI Criminal 3d No. 7.06A (Supp. 1996), Committee Notes at 68.

We further recognize that the Criminal Code of 1961 (720 ILCS 5/7-4(West 1996)), restricts the defenses available to a defendant who is an aggressor.  A
 justification defense is not available to a defendant "attempting to commit, committing, or escaping after the commission of, a forcible felony."  720 ILCS 5/7-4(a)(West 1996).  Therefore, a defendant cannot raise a justification defense if he or she sets into motion a course of felonious conduct.  
People v. Mills
, 252 Ill. App. 3d 792, 799 (1993).  
In the case at bar, however, there is a factual dispute as to whether Luckett, Foster, and Toney were the aggressors and set into motion a course of felonious conduct.  It is within the jury's province to resolve factual disputes, including the factual issue of identifying the initial aggressor.  
People v. Johnson
, 247 Ill. App. 3d 578, 585 (1993).  Thus, when there is sufficient evidence to raise the issue of who initiated the violence and whether the killing occurred during the course of a forcible felony, the jury should be instructed on the defendant's justifiable defenses supported by the evidence.  
People v. Robinson
, 163 Ill. App. 3d 754, 761 (1987).  The jury is then able to use the applicable law in making a full and fair evaluation of the competing theories presented by the State and the defendant.  

Whether the conduct here qualified as felony murder, second degree murder or self-

defense was a question of fact for the jury to resolve. There is a factual dispute as to whether Luckett, Foster and Toney were the aggressors and set into motion a course of felonious conduct by entering Four Corner Hustler area with the plan and intent to shoot at rival gang members.  Luckett maintained that he and Foster went to Four Corner Hustler territory with Toney, who was visiting his girlfriend, and only fired their weapons in self-defense against the violence initiated by the Four Corner Hustlers.  Luckett repeatedly testified that he feared for his life and that he used force to prevent an imminent threat of death or great bodily harm.  Luckett denied any plan or intent to commit a forcible felony. 

We conclude that the recent history of violence between the rival gangs, the previous confrontations between defendant and the Harris brothers, the testimony of defendant and some of the testimony of the  State's witnesses, as well as the firearm evidence, provide sufficient evidence of self-defense to warrant an instruction on second degree murder.  There is evidence that a jury could believe and find that defendant did not commit the forcible felony of aggravated discharge of a weapon, but fired the weapon under the unreasonable belief that circumstances justified the use of deadly force and was therefore guilty of second degree murder.  We conclude  the record demonstrates sufficient evidence to support, in addition to the felony murder instruction and self-defense instruction, a second degree murder instruction.  Therefore, the trial court abused its discretion in refusing to instruct the jury on second degree murder. 

B. Prejudice 

The State relies on 
People v. Rixie
, 190 Ill. App. 3d 818, 831 (1989), to support its argument that the trial court's refusal in this case to instruct the jury on second degree murder did not substantially prejudice the defendant.  Rixie was charged with intentional murder under section 9-1(a)(1) and felony murder under section 9-1(a)(3) with armed robbery as the underlying felony.  The State dismissed the intentional murder count, and the court instructed the jury on felony murder refusing the defense instructions on voluntary manslaughter and lesser offenses.  
Rixie
, 190 Ill. App. 3d at 825-26.  The appellate court under the facts of the 
Rixie
 case found no substantial prejudice to the defendant.  
Unlike 
Rixie
 the trial court here found the evidence sufficient to submit to the jury the self-defense instruction on justifiable use of force.  

When the evidence supports submitting to the jury an instruction on justifiable use of force, an instruction for second degree murder should likewise be given.  
People v. Lockett
, 82 Ill. 2d 546, 552 (1980).  In 
Lockett
, the court determined that a self-defense and voluntary manslaughter (now second degree murder) instruction should be given when any evidence is presented showing the defendant's subjective belief that use of force is necessary.  
Lockett
, 82 Ill. 2d at 552.  The court noted the judge's duty is to determine if any evidence is presented that the defendant had a subjective belief that use of force was necessary.  It is the duty of the jury to weigh the evidence and determine if the defendant in fact believed use of force was necessary and whether that belief was reasonable or unreasonable.  Since there was sufficient evidence from which the jury could have concluded that Luckett killed the victim in the unreasonable belief that he was justified in doing so, the failure to instruct on second degree murder substantially prejudiced the defendant. 

C. Harmless Error  

The State additionally argues that failure to instruct on second degree murder was harmless, because the jury found defendant guilty of felony murder based on aggravated discharge of a firearm, the underlying felony.  "In order for an alleged error in instructions to be considered harmless, it must be demonstrated that the result of a trial would not have been different if the proper instruction had been given."  
People v. Dennis
, 181 Ill. 2d 87, 107 (1998). 

In 
People v. Moore
, 95 Ill. 2d 404, 411 (1983), our supreme court held that a failure to submit a voluntary manslaughter instruction was harmless error because the jury found defendant guilty of felony murder.  In that case, the State produced evidence that the victim was killed during the course of an armed robbery.  The State's witnesses testified that defendant entered a jewelry store, pulled out a weapon, stole merchandise, and shot the store owner from a distance of five or six feet.  
Moore
, 95 Ill. 2d at 406.  The defendant testified that he shot the victim accidently after a struggle.  The supreme court found that, even if the jury had received a voluntary manslaughter instruction, the jury still would have found defendant guilty of murder because "the overwhelming weight of the evidence" established that defendant committed a forcible felony of armed robbery and the victim was killed during the course of that felony. 
 
Moore
, 95 Ill. 2d at 411. 

In this case, unlike 
Moore
, the overwhelming weight of the evidence did not establish Luckett committed the forcible felony of aggravated discharge of a firearm and the victim was killed during the course of that felony.  Before the jury could find that defendant committed felony murder, the jury  had to determine who initiated the violence, whether Luckett acted in self-defense and, if he acted in self-defense, whether the belief that force was necessary was reasonable or unreasonable.  Unlike the evidence in this case, in 
Moore
, only the self-serving testimony of the defendant supported his claim of self-defense.  Luckett's trial testimony, portions of his statement to the police, the forensic evidence, and even some of the testimony of the State's witnesses supported Luckett's defense that he used deadly force based on an unreasonable belief that such deadly force was justified.    

In reaching its decision, the jury had to weigh conflicting evidence and judge the credibility of the witnesses.  By failing to provide a second degree murder instruction, the trial court took away from the jury resolution of the fact question of whether Luckett's belief that he justifiably used deadly force was reasonable or unreasonable.  We note parenthetically that a separate jury, which resolved codefendant Foster's case two months before Luckett's trial, received from the same trial judge a second degree murder instruction and returned against Foster verdicts of guilty for second degree murder and not guilty of felony murder; the evidence against Foster mirrored
 the evidence against Luckett.  While this fact plays no part in our analysis, based on the record in this case we cannot say the result of Luckett's trial would not have been different if the proper instructions had been given; therefore, omission of these instructions was not harmless error. 
 

CONCLUSION

We find the trial court erred by not instructing the jury as to intentional, knowing and second degree murder.  The trial judge improperly rejected the defense counsel's tendered jury instructions on these offenses.  

We reverse defendant's convictions and sentences.  We have reviewed the evidence and find that it was sufficient to prove defendant guilty beyond a reasonable doubt.  There is no double jeopardy impediment to a new trial.  
People v. Porter
, 168 Ill. 2d 201, 215 (1995).  We also note we have made no finding as to defendant's guilt that would be binding on retrial.  
People v. Jones
, 175 Ill. 2d 126, 134 (1997).

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.  

TULLY and GALLAGHER, JJ., concur.