THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RASHEED WILLIAMS *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—97—4559, 1—98—1767, 1—98—1768, 1—98—2420 cons.

Opinion filed June 30, 2000.—Rehearing denied July 25, 2000.

O'MARA FROSSARD, P.J., specially concurring.

Donna Hickstein-Foley, of Chicago, for appellant Rasheed Williams.

James Geis, of Chicago, for appellant Jonathan Beard.

Michael J. Pelletier and Manuel S. Serritos, both of State Appellate Defender's Office, of Chicago, for appellant Nazareth Beard.

Rita A. Fry, Public Dedender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant Lewis Taylor.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Marcel Benavides, Katherine Blakey Cox, James Fitzgerald, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:
Jonathan Beard, Nazareth Beard, Lewis Taylor and Rasheed Williams were charged with first degree murder and home invasion involving Sammie Britton (decedent) arising from an incident on December 27, 1994. The court granted defendants' motions to sever their trials and Jonathan, Nazareth and Taylor were tried simultaneously by three separate juries. Williams was tried in a separate proceeding. Nazareth and Jonathan Beard filed motions to quash their arrests which were granted. They also filed motions to suppress their statements as fruit of their illegal arrests which were subsequently denied. The court determined that their incriminating statements were attenuated by events following their illegal arrests. Nazareth and Jonathan Beard were convicted of first degree murder and home invasion after a jury trial and were both sentenced to terms of imprisonment of 28 and 12 years, respectively, to run concurrently.

Taylor also brought a motion to quash his arrest which was denied. The court determined that the officers had probable cause to arrest him and exigent circumstances to enter his home and arrest him without a warrant. His motion to suppress his statement was also denied since the court determined his statement was voluntary. Taylor was convicted of home invasion and felony murder based on home invasion, and he was sentenced to 12 and 20 years, respectively, to run concurrently.

Williams also brought a pretrial motion to quash his arrest based on a lack of probable cause at the time the arrest was effectuated. His arrest was subsequently quashed. His motion to suppress his statement made while in custody was denied. The court determined that Williams' statement was attenuated from his illegal arrest. Williams was convicted of home invasion and first degree murder and was sentenced to 40 years' imprisonment.

Jonathan, Nazareth, Taylor and Williams now bring this appeal. We affirm in part, reverse in part, and vacate in part. Due, however, to the page limitations imposed on our published opinions by Supreme Court Rule 23 (166 Ill. 2d R. 23), the only portion of our analysis that will be published relates to Taylor's argument that the trial court improperly refused instructions and verdict forms on involuntary manslaughter and second degree murder after the prosecution improperly nol-prossed the two counts of murder other than felony murder.

Attenuation Hearing

Detective McDermott of the Chicago police department testified Taylor was brought to Area 2 after midnight on January 17, 1995. Taylor had recently turned 19. McDermott and his partner, Detective Boylan, talked with Taylor for 15 to 20 minutes between 12:30 and 1 a.m. McDermott testified the detectives read Taylor his *Miranda* rights and did not make any threats or promises.

An assistant State's Attorney took Taylor's statement at about 10:15 a.m. on January 17, 1995. In his statement, Taylor said he was "hanging around" with Meko McBounds, Nazareth, Jonathan, Quanario Renee and Rasheed Williams on December 27, 1994, but later broke off from the group and went to talk to a girl who lived next door to decedent. He heard shuffling noises coming from decedent's apartment and when he went next door, he saw Williams and Jonathan punching decedent. He stated that decedent broke away and tried to run, but bumped into him at the door and grabbed his coat. Taylor stated he became angry and pushed decedent into the television. He stated that he hit decedent with a BB gun he had

brought with him. When decedent fell, Taylor and the others surrounded him and kicked him repeatedly.

After noting that defendants lacked standing to object to any conduct regarding Renee, the trial court held that Renee's statement implicating the other five boys gave the detectives probable cause to detain and question each of the other defendants. Therefore, the trial court ruled that the State had met its burden and could introduce the statements of Nazareth and Jonathan at trial because their illegal arrests were attenuated by intervening events. Taylor's motion to suppress his statement was also denied. The trial court held that the police had probable cause for his arrest from statements given by the other defendants, who all stated Taylor participated in the beating of decedent. The court stated in its written order, "the only credible evidence I heard says that this 19 year old adult knowingly and intelligently waived his rights after having been given full *Miranda* warnings. There is no credible evidence to suggest that the statement was the product of any threat, any promise, or any untoward action by authorities."

The court also ruled that Williams' confession was admissible because the taint of the initial illegal arrest had been dissipated. In reaching that decision, the court found that the police had probable cause to arrest defendant before he gave his statement and cited as intervening circumstances the arrival of his mother at the station and the advisement of the voluntary statements of Williams' codefendants.

After Judge Hett heard the pretrial motions, the matter was thereafter transferred to Judge Lampkin, who presided simultaneously over three juries in the severed case involving Jonathan, Nazareth and Taylor. Judge Hett continued to preside over Williams' trial.

The Trial

The following evidence was adduced at trial. Eddie Jean Bryant, the decedent's sister, testified that her brother was 51 and in good health. On the day of the assault, decedent was living in an apartment at 13096 S. Drexel in the Altgeld Gardens neighborhood in Chicago. She said he had lived in Altgeld Gardens all his life. Bryant testified that her brother was hospitalized from December 27, 1994, to January 12, 1995, when he passed away due to complications from pneumonia. She stated that, following her brother's death, she went to his apartment and found that all the decedent's chairs had been slashed.

Chicago Housing Authority (CHA) police officer Stanley Grice testified that on December 17, 1994, decedent came into the Altgeld Gardens police station and reported that some teenagers had taken over his apartment and were denying him access. Grice investigated

and saw teenagers running out of the apartment. He managed to arrest Quanario Renee as he left the apartment. Decedent signed a complaint against Renee for criminal trespass to property.

James Fitzgibbon, a fire department paramedic, testified that he responded to a call on December 27, 1994, from the CHA field house at 901 E. 131st Street at 10:20 p.m. Fitzgibbon testified that he found decedent complaining of shortness of breath and sore ribs. Decedent said he had been beaten by several boys. Fitzgibbon took decedent to Roseland Hospital, arriving at 10:40 p.m.

Dr. J. Lawrence Cogan, a forensic pathologist of the medical examiner's office, testified that on December 27, 1994, decedent was admitted to the hospital complaining of sore left ribs and difficulty breathing. An X ray showed he had four fractured or broken ribs. He was further diagnosed with a collapsed left lung. Decedent's body temperature rose from 96.1 to 99.9 degrees from the time he was admitted to the hospital until he was sent to the ward. The amount of oxygen present in his blood was low. On December 29, 1994, a tube was inserted to reinflate the collapsed left lung. This process takes a few days during which the right lung does most of the work of aerating or oxygenating the blood.

Decedent later developed pneumonia in his right lung. On December 31, 1994, he appeared disoriented and restless and was treated with Haldol and restrained. On January 2, 1995, he experienced a blood pressure spike. On January 3, 1995, there was a significant shift in his white blood cell count. Later, tests showed his kidneys were beginning to shut down. On January 5, the chest tube was removed because the pneumothorax had cleared up. On January 6, 1995, decedent was dehydrated, and on January 9, 1995, he was transferred to intensive care. On January 10, he was resuscitated from cardiac arrest. He was on a mechanical ventilator when he died on January 12, 1995.

Dr. Cogan testified that on January 14, 1995, he reviewed medical records and police reports and completed an autopsy on decedent. The medical history indicated that decedent suffered from hypertension, asthma, chronic lung disease (emphysema), and chronic alcohol abuse. In September of 1994, decedent was hospitalized for a "spontaneous pneumothorax" or collapsed left lung for which he was treated and released. He was taking medication for a seizure disorder and hypertension at the time of his death. Dr. Cogan testified that decedent looked much older than his 51 years.

Dr. Cogan's autopsy revealed that decedent weighed 125 pounds and was 5 feet 11½ inches tall at the time of his death. Examination of the body revealed four healing rib fractures and discoloration on

the outside of the rib cage that was consistent with decedent having been beaten or kicked. Examination of the cardiovascular system revealed severe narrowing and calcification of the arteries. Examination of decedent's skull revealed no head trauma. The decedent's lungs were a little heavy and firm, consistent with pneumonia. Dr. Cogan found that while the assault was not the immediate cause of death, "it set in [motion] a sequence of events which eventually led" to decedent's death.

Detective Andrew Abbott of the Chicago police department testified that on the morning of January 14, 1995, he and his partner, Detective Bruce Campbell, were assigned to investigate the death of decedent. On January 15, 1995, after learning that decedent had died in the hospital, they proceeded to decedent's apartment. Police obtained a key to the apartment from decedent's mother. Detective Abbott testified:

> "[Furniture] was tossed around and out of order. We found numerous gang slogans written all across the interior walls of that apartment, across the appliances, across the interior doors, and on the front exterior [door] of the apartment."

Detective Abbott contacted the mobile crime lab and requested assistance to process the scene.

Carl Brasic, a forensic investigator with the police crime lab, testified that he received his assignment on January 15, 1995. In processing the scene, Brasic and his partner examined the decedent's apartment and took numerous photographs. During his testimony, Brasic described the graffiti he photographed in decedent's apartment that had been inscribed on walls, doors, appliances, windows, and mirrors. He testified he saw graffiti and the nicknames "Cain," "Stacy," and "O'Dog" scrawled on a water pipe, the kitchen freezer, the bathroom mirror and the bedroom door. The State then introduced photographs of the decedent's apartment which included the nicknames and some gang graffiti. Brasic revealed that no identifiable fingerprints were found at the scene, nor were there any bloodstains. On cross-examination, Brasic opined that the apartment did not appear to have been ransacked. He saw a small television on top of a large television in the living room and neither was damaged.

Following the jury trials, Jonathan, Nazareth and Williams were convicted of first degree murder and home invasion. Taylor was convicted of felony murder based upon home invasion as well as home invasion.

Taylor contends the trial court improperly refused instructions and verdict forms on involuntary manslaughter and second degree murder after the prosecution improperly nol-prossed the two counts of

murder other than felony murder. Taylor argues that he was substantially prejudiced because the trial court left only felony murder, and the jury was precluded from finding him guilty of a lesser-included offense of felony murder. We disagree.

■ First, we conclude the trial court properly allowed the State to nol-pros the charges of intentional and knowing murder. The State has nearly unfettered discretion in determining whether to nol-pros a charge. *People v. Olson*, 128 Ill. App. 3d 560, 562, 470 N.E.2d 1176, 1178 (1984); *People v. Rixie*, 190 Ill. App. 3d 818, 831, 546 N.E.2d 52, 60 (1989). Consent and approval of the court are necessary before the State may enter a *nolle prosequi*, but the standard of the discretion vested in the court to review the State's request is governed by a determination of whether the State's action is "capriciously or vexatiously repetitious," or whether it will cause substantial prejudice to the defendant. *Olson*, 128 Ill. App. 3d at 562, 470 N.E.2d at 1178. The State's power to nol-pros a charge extends to all stages of the trial proceedings up until the time that sentence is imposed. *People v. Baes*, 94 Ill. App. 3d 741, 746, 419 N.E.2d 47, 51 (1981); *Olson*, 128 Ill. App. 3d at 562, 470 N.E.2d at 1178.

Initially, Taylor was charged with intentional murder, knowing murder, and felony murder, in violation of sections 9—1(a)(1), (a)(2), and (a)(3) of the Criminal Code of 1961 (720 ILCS 5/9—1(a)(1) through (a)(3) (West 1994)). After jury selection, the State nol-prossed the first count of murder, brought under section 9—1(a)(1). During the instruction conference, the trial court indicated it would give instructions and verdict forms on involuntary manslaughter. Thereafter, the State nol-prossed the second murder count, brought under section 9—1(a)(2), and left only felony murder. The court then refused to give the jury instructions and verdict forms on involuntary manslaughter or on second degree murder. The court also denied a motion for a mistrial.

In *People v. Rixie*, 190 Ill. App. 3d 818, 546 N.E.2d 52, a case substantially similar to the case at bar, the defendant was charged with one count of murder (see 720 ILCS 5/9—1(a)(1) (West 1994)) and one count of felony murder (see 720 ILCS 5/9—1(a)(3) (West 1994)). After the initial instruction conference, the court agreed to instruct the jury on the lesser-included offenses of murder. The State then nol-prossed the intentional murder count (see 720 ILCS 5/9—1(a)(1) (West 1994)), leaving only the felony murder count. Defendant's motion for a mistrial was denied. Despite the dismissal of the intentional murder charge, defendant proffered instructions on the lesser-included offenses. These instructions were refused and defendant was convicted of felony murder. The court determined:

"By allowing the State to nol-pros count I [murder] of the indict-

ment, the jury was limited to finding guilty or not guilty of felony murder only. We do not see this as substantially prejudicing defendant. Defendant knew of the felony murder charge since the inception of the proceedings. He was given a full opportunity to prepare and present a defense to felony murder. The jury was presented with all the evidence in this matter along with counsel's arguments that Rixie was not involved in any plan or attempt to rob [the victim]. The jury could have concluded that Rixie may have been guilty of something, but not felony murder. This determination would have required the jury to find Rixie not guilty. \*\*\* The court did not err in allowing the State to nol-pros the murder charge and to proceed on only the felony murder charge." *Rixie*, 190 Ill. App. 3d at 831, 546 N.E.2d at 61.

■ Like the defendant in *Rixie*, Taylor was charged with felony murder from the start. He was able to defend against that charge. The jury was properly instructed on the charge of felony murder. Thus, as in *Rixie*, Taylor was not prejudiced and the trial court properly granted the State's motion to nol-pros the murder counts.

Next, we review the trial court's refusal to issue tendered jury instructions under an abuse of discretion standard. *People v. Kidd*, 295 Ill. App. 3d 160, 167, 692 N.E.2d 455, 460 (1998). First, Taylor argues the trial court should have given an involuntary manslaughter instruction. Second, he argues the trial court erred in not giving a second degree murder instruction.

■ Generally, a defendant may not be convicted of an offense for which he has not been charged. *People v. Novak*, 163 Ill. 2d 93, 105, 643 N.E.2d 762, 769 (1994). However, in an appropriate case, a defendant is entitled to have the jury instructed on less serious offenses that are included in the charged offense. *People v. Hamilton*, 179 Ill. 2d 319, 323, 688 N.E.2d 1166, 1169 (1997); *People v. Landwer*, 166 Ill. 2d 475, 485-86, 655 N.E.2d 848, 854 (1995); see *Novak*, 163 Ill. 2d at 105, 643 N.E.2d at 769, citing *People v. Jones*, 149 Ill. 2d 288, 292, 595 N.E.2d 1071, 1073 (1992) ("an accused may be convicted of an offense not expressly included in the charging instrument if that offense is a 'lesser included offense' of the offense expressly charged"). The purpose of an instruction on a lesser offense is to provide " 'an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense.' " *Hamilton*, 179 Ill. 2d at 323-24, 688 N.E.2d at 1169, quoting *People v. Bryant*, 113 Ill. 2d 497, 502, 499 N.E.2d 413, 415 (1986).

■ An included offense is an offense that "[i]s established by proof

of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2—9(a) (West 1994). In applying this definition to determine whether a particular offense is included in a charged offense, the Illinois Supreme Court has held that the proper approach is to examine the charging instrument and the evidence presented at trial. *Hamilton*, 179 Ill. 2d at 324, 688 N.E.2d at 1169; *Landwer*, 166 Ill. 2d at 486, 655 N.E.2d at 854.

■ To determine whether an offense is identified as a lesser-included offense under the charging instrument approach, a court must look to see if the offense is described by the charging instrument. *Hamilton*, 179 Ill. 2d at 324, 688 N.E.2d at 1169; *People v. Jones*, 175 Ill. 2d 126, 135, 676 N.E.2d 646, 650 (1997). "Once a lesser included offense is identified, however, it does not automatically follow that the jury must be instructed on the lesser offense." *Hamilton*, 179 Ill. 2d at 324, 688 N.E.2d at 1169, citing *Novak*, 163 Ill. 2d at 108, 643 N.E.2d at 770. A defendant is only entitled to a lesser-included offense instruction if an examination of the evidence reveals that it would permit a jury to rationally find the defendant guilty of the lesser offense yet acquit the defendant of the greater offense. *Hamilton*, 179 Ill. 2d at 324, 688 N.E.2d at 1169; *Landwer*, 166 Ill. 2d at 486, 655 N.E.2d at 854.

Applying these principles to the instant case, we must first determine whether involuntary manslaughter was described by the charging instrument in Taylor's case. The bill of indictment in this case alleged that Taylor, "without lawful justification while committing a forcible felony, to wit: home invasion, beat and killed Sammie Britton with hands, feet and a B.B. gun in violation of chapter 720, Act 5, section 9—1(a)(3) of the Illinois Compiled Statutes 1992 as amended." In comparison, the offense of involuntary manslaughter is committed when a person "unintentionally kills an individual without lawful justification" and "if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." 720 ILCS 5/9—3(a) (West 1996).

■ It is clear that the offense of involuntary manslaughter requires a mental state of recklessness whereas felony murder requires no mental state independent of the mental state of the predicate felony. See *People v. Sandy*, 188 Ill. App. 3d 833, 842-44, 544 N.E.2d 1248, 1254 (1989) (involuntary manslaughter is not a lesser-included offense of felony murder because it requires a reckless mental state and felony murder does not require any mental state independent of that required by the underlying felony); see *People v. McCarroll*, 168 Ill. App. 3d

1020, 1023, 523 N.E.2d 150, 152 (1988) ("if death resulted from recklessness or even accident during the commission of the underlying felony, the defendant would still be guilty of felony murder"). Essentially, involuntary manslaughter requires proof of a more culpable mental state than felony murder. Therefore, where the sole murder charge against a defendant is based on felony murder, no involuntary manslaughter instruction need be given. *McCarroll*, 168 Ill. App. 3d at 1023, 523 N.E.2d at 152. Since involuntary manslaughter is not a lesser-included offense of felony murder, we need not discuss the second prong of the inquiry—whether evidence exists to permit a jury to rationally find Taylor guilty of the lesser offense.

■ Next, Taylor argues that a second degree murder instruction should have been given. A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) and (2) of subsection (a) of section 9—1, and a mitigating factor is present. 720 ILCS 5/9—1(a), 9—2(a) (West 1994). The mitigating factors include: (1) if at the time of the killing, defendant is acting under a sudden and intense passion resulting from serious provocation; and (2) at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing, but his belief is unreasonable. 720 ILCS 5/9—2(a)(1), (a)(2) (West 1994).

■ As with involuntary manslaughter, the offense of second degree murder requires a mental state (intent to commit murder or knowing such acts create a strong probability of death) and felony murder requires no mental state. Furthermore, second degree murder requires proof of a mitigating defense. Since second degree murder requires proof of additional facts and a more culpable mental state than felony murder, it cannot be a lesser-included offense of felony murder. See 720 ILCS 5/2—9(a) (West 1994).

This finding is supported by the fact that one of the rationales behind the felony murder doctrine is that a person who intends to commit a forcible felony should not be excused from the unintended results of his actions that occur during the course of the original felony. *People v. Williams*, 164 Ill. App. 3d 99, 109, 517 N.E.2d 745, 751 (1987). Therefore, in most felony murder cases it should not be a defense that a defendant is provoked. See *Williams*, 164 Ill. App. 3d at 108, 517 N.E.2d at 751; *Kidd*, 295 Ill. App. 3d at 163-64, 692 N.E.2d at 458. "A person who intends to rob a shopkeeper or rape an individual is not allowed to claim that he was provoked by his victim or to raise any other affirmative defense if[,] in the course of committing the original felony, the intended victim or any other person is killed." *Williams*, 164 Ill. App. 3d at 109, 517 N.E.2d at 751. The argument that a

defendant was provoked to commit the robbery or rape in which the victim was killed similarly has no merit. *Kidd*, 295 Ill. App. 3d at 164, 692 N.E.2d at 458. Mental state is irrelevant in a felony murder analysis. *Kidd*, 295 Ill. App. 3d at 164, 692 N.E.2d at 458. Once a person intends to commit a forcible felony and takes a substantial step to carry out that intent, he is liable for all of the actual results of his actions, even if they are unintended. *Williams*, 164 Ill. App. 3d at 109, 517 N.E.2d at 751. A person cannot claim that he was provoked by a person against whom he has already committed or attempted to commit a forcible felony. *Williams*, 164 Ill. App. 3d at 109, 517 N.E.2d at 751.

■ Nevertheless, courts have carved out a narrow exception to this rule. Provocation and belief in the need for self-defense are partial defenses to a felony murder charge only where provocation or belief in the need for self-defense occurs before defendant forms felonious intent and before he commits the forcible felony. *Kidd*, 295 Ill. App. 3d at 165, 692 N.E.2d at 458. Therefore, if there is evidence that provocation or belief in the need for self-defense occurred prior to the emergence of defendant's felonious intent, defendant's request for a second degree murder instruction must be granted. *Kidd*, 295 Ill. App. 3d at 167, 692 N.E.2d at 460. However, the defendant first has the burden of proving that at least "some evidence" of serious provocation or need for self-defense exists, otherwise the trial court may deny giving the instruction. *Kidd*, 295 Ill. App. 3d at 167, 692 N.E.2d at 460; *People v. Austin*, 133 Ill. 2d 118, 125, 549 N.E.2d 331, 334 (1989).

■ We hold that the trial court did not abuse its discretion in refusing to give Taylor's second degree murder provocation instruction because Taylor did not present sufficient evidence to warrant giving that instruction. See *Kidd*, 295 Ill. App. 3d at 167, 692 N.E.2d at 460. Specifically, Taylor failed to produce evidence that he was acting under a sudden and intense passion resulting from serious provocation at the time he beat decedent.

The Criminal Code of 1961 defines "serious provocation" as "conduct sufficient to excite an intense passion in a reasonable person." 720 ILCS 5/9—2(b) (West 1994). The defendant must be acting under a sudden and intense passion spurred from serious provocation that the law recognizes as reasonable. *Kidd*, 295 Ill. App. 3d at 167, 692 N.E.2d at 460. Illinois courts have recognized four categories of provocation: (1) substantial physical injury or substantial physical assault; (2) mutual quarrel or combat; (3) illegal arrest; and (4) adultery with the offender's spouse. *Kidd*, 295 Ill. App. 3d at 167, 692 N.E.2d at 460.

The evidence shows that on December 27, 1995, the day of the

incident, Taylor was "hanging around" with McBounds, Jonathan and Nazareth Beard, Rasheed Williams and Quanario Renee. He broke off from the group and went to talk to a girl who lived next door to the decedent. While next door, he heard a struggle going on inside decedent's apartment. He went inside decedent's apartment. He saw his friends punching and kicking the decedent. Decedent then broke away from the other attackers and tried to run toward the door. He ran into Taylor and grabbed his coat. Taylor then pushed decedent, hit him in the head with his BB gun and joined his friends in kicking him.

Taylor does not specify which of the four recognized categories of provocation he was acting under. It appears that the only possible category would be mutual quarrel or combat. However, mutual quarrel or combat is defined as a "fight or struggle which both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." *Austin*, 133 Ill. 2d at 125, 549 N.E.2d at 334.

We conclude this situation did not constitute mutual combat. Taylor presented no evidence that decedent voluntarily entered into the struggle or that the fight was on equal terms. See *Kidd*, 295 Ill. App. 3d at 167, 692 N.E.2d at 460. This was not a one-on-one fight since decedent was already being beaten by Taylor's five teenage friends when Taylor entered the apartment. Decedent was 51 years old, frail and sick. Even if decedent grabbed Taylor's jacket, this was not serious provocation. He may have only been trying to escape the beating by running toward the door. Instead of an escape, however, he ran into Taylor. Therefore, the trial court did not abuse its discretion when Taylor was prevented from presenting to the jury the second degree murder instructions based on provocation. We need not determine *when* the provocation occurred, as we have determined that no evidence of serious provocation existed.

Next, we hold that the trial court did not abuse its discretion in refusing to give Taylor's second degree murder instruction based upon his unreasonable belief in the need for self-defense. Again, Taylor did not present sufficient evidence to warrant giving that instruction. The evidence of Taylor's unreasonable belief did not clearly outweigh the State's evidence indicating that no such mitigating factor existed at the time of the killing.

The only evidence Taylor provides regarding this defense is that, when he walked in decedent's door, decedent grabbed his jacket. On the other hand, the State established that, on the day of the beating, Taylor was with McBounds, the Beard brothers, Williams and Renee. On that same day, the group decided to "twist Sammie's cap." While Taylor broke off from the group and his friends went to decedent's

apartment, Taylor went to the apartment next door to decedent's. He had his BB gun with him at that time. When he heard the struggle, he walked into decedent's apartment and saw his five friends punching decedent. The jury could conclude that the defendant could not believe, even unreasonably, that he was in imminent danger of death or great bodily harm when he participated in the beating. See *People v. Thurman*, 223 Ill. App. 3d 196, 204, 584 N.E.2d 1069, 1075 (1991). Therefore, the trial court did not abuse its discretion when Taylor was prevented from presenting the second degree murder instructions based upon unreasonable belief in self-defense to the jury. To that end, we do not need to evaluate *when* the belief in the need for self-defense was formed.

Taylor cites *People v. Toney*, 309 Ill. App. 3d 28 (1999), and *People v. Luckett*, 309 Ill. App. 3d 14 (1999), for the contention that if the evidence warrants instructions on second degree murder, then those instructions should be given, regardless of the charges actually filed against Taylor. However, these cases do not conflict with our decision today.

In *Toney*, defendant was charged with intentional and knowing murder and aggravated discharge of a firearm. He was convicted of first degree murder, attempted first degree murder, and aggravated discharge of a firearm. Defendant argued on appeal that the court erred in failing to instruct the jury on the offense of second degree murder. He contended there was sufficient evidence to raise the issue of whether he had an unreasonable belief that self-defense was necessary. The appellate court concluded that the record demonstrated sufficient evidence to warrant an instruction on second degree murder due to the history of the rival gangs, the evidence of a confrontation just days before, and evidence of the fact that the victim and his friends had been the aggressors.

In *Luckett*, a related case, defendant was charged with intentional and knowing first degree murder and three counts of aggravated discharge of a firearm. He was found guilty of first degree murder, aggravated discharge of a firearm and attempted first degree murder. The jury was given a felony murder instruction based upon aggravated discharge of a firearm. The jury was not given an instruction for the charged offense of intentional and knowing murder or for the lesser mitigated offense of second degree murder. The State argued that there was no evidence to support an instruction for second degree murder, but the appellate court again decided otherwise finding that the record demonstrated sufficient evidence to warrant an instruction on second degree murder.

Ordinarily, a defendant cannot be convicted of an uncharged of-

fense unless it is a lesser-included offense of the crime charged. *Hamilton*, 179 Ill. 2d at 323-24, 688 N.E.2d at 1169; *People v. Schmidt*, 126 Ill. 2d 179, 183-84, 533 N.E.2d 898, 900 (1988). Second degree murder is not a lesser-included offense of first degree murder (intentional or knowing) but is more accurately described as a lesser *mitigated* offense. *People v. Jeffries*, 164 Ill. 2d 104, 122-23, 646 N.E.2d 587, 595 (1995). It is a lesser offense because its penalties upon conviction are lesser, and it is a mitigated offense because it is first degree murder *plus* defendant's proof by a preponderance of the evidence that a mitigating factor is present. *People v. Newbern*, 219 Ill. App. 3d 333, 356, 579 N.E.2d 583, 598 (1991); *Jeffries*, 164 Ill. 2d at 122, 646 N.E.2d at 595.

In *People v. Rogers*, 286 Ill. App. 3d 825, 677 N.E.2d 13 (1997), the court held that departure from the general rule—that a defendant cannot be convicted of an uncharged offense unless it is a lesser-included offense—was authorized by section 9—2(c) of the Illinois Criminal Code. Section 9—2(c) states that "[w]hen a defendant is on trial for first degree murder *** the defendant can be found guilty of second degree murder." 720 ILCS 5/9—2(c) (West 1998). Therefore, a defendant charged with intentional or knowing first degree murder may be convicted of second degree murder even though it was not charged and is not a lesser-included offense. *People v. Kauffman*, 308 Ill. App. 3d 1, 8, 719 N.E.2d 275, 280 (1999). Notably, the court must still consider whether "an examination of the evidence reveals that it would permit a jury to rationally find the defendant guilty of the lesser offense," in this case, second degree murder. See *Hamilton*, 179 Ill. 2d at 324, 688 N.E.2d at 1169.

Since the defendants in *Toney* and *Luckett* were both charged with first degree murder (intentional or knowing), and there was sufficient evidence in the record supporting an unreasonable belief in the need for self-defense, a second degree murder instruction was properly given. In this case, however, Taylor was charged with felony murder, not with first degree murder based upon sections 9—1(a)(1) and (a)(2). To the contrary, the exception outlined in *Rogers* involved intentional and knowing first degree murder and second degree murder, but did not include felony murder. Therefore, the second degree murder instruction was properly denied in this case.

█ Fifth, Taylor argues that the jury instructions did not accurately state the law of accountability in this case. However, Taylor failed to object to the State's instruction number 13 on accountability at trial or in Taylor's posttrial motion. Further, while he objected to the State's instruction number 14 on accountability at trial, he failed to object to the instruction in his posttrial motion. The failure to raise

an issue in a written motion for a new trial results in a waiver of that issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186. Therefore, we will not consider this issue.

Sixth, Taylor contends he was arrested in violation of state law and the fourth amendment. Taylor argues that his arrest was unlawful because he was arrested in his home without a warrant, allegedly in violation of the fourth amendment as construed in *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). Moreover, he contends that the incriminating statements he made following his arrest should have been suppressed because they were not sufficiently attenuated from the allegedly illegal arrest. The trial court held that the officers had exigent circumstances to arrest Taylor in his home and, therefore, his arrest was legal. To that end, the trial court determined Taylor's statement was properly admitted.

■ The physical entry of the home is the chief evil against which the fourth amendment is directed. *Payton*, 445 U.S. at 585, 63 L. Ed. 2d at 650, 100 S. Ct. at 1379-80. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.

The State bears the burden of demonstrating exigent need for a warrantless search or arrest. *People v. Foskey*, 136 Ill. 2d 66, 75, 554 N.E.2d 192, 197 (1990). Where the facts and the credibility of the witnesses are undisputed, the question of whether exigent circumstances are present is a question of law, subject to consideration by this court *de novo*. *People v. McNeal*, 175 Ill. 2d 335, 345, 677 N.E.2d 841, 846 (1997).

■ Although each case must be decided on its own facts, the Illinois Supreme Court has recognized the following factors as relevant to a determination of exigency in circumstances involving a warrantless entry into a private residence to effectuate an arrest: (1) whether the crime was committed recently; (2) whether there was any deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) whether the crime was grave or violent; (4) whether there was a reasonable belief that the suspect was armed; (5) whether the police were acting on a clear showing of probable cause; (6) whether there was a likelihood that the suspect would escape if he was not swiftly apprehended; (7) whether there was strong reason to believe that the suspect was in the premises; and (8) whether the police entry was made peaceably, albeit without consent. *McNeal*, 175 Ill. 2d at 345, 677 N.E.2d at 846. This list of factors is not exhaustive (*McNeal*, 175 Ill. 2d at 345, 677 N.E.2d at 847), and all factors may not be present in every case (*People v. Cobb*, 97 Ill. 2d 465, 484, 455 N.E.2d 31, 39 (1983)). A court must consider the totality of the

circumstances confronting the police at the time they entered the house and determine whether they acted reasonably. *McNeal*, 175 Ill. 2d at 345-46, 677 N.E.2d at 847.

The balance of these factors clearly supports the police conduct here. First, we note that while the crime was not recently committed, the officers obtained probable cause to arrest Taylor only four hours prior to his arrest. The law is clear that "[e]xigent circumstances may arise *** not only immediately after the perpetration of the crime, but also when additional facts justify immediate action." *Cobb*, 97 Ill. 2d at 486, 455 N.E.2d at 40 (while the arrest of Cobb occurred three weeks after the crimes, it was within minutes of receipt by the police of new material information establishing probable cause to believe Cobb committed the offense). Police arrested Taylor within five days of decedent's death and, more importantly, within four hours of learning of his involvement from the confessions of the other defendants. Second, there was no deliberate or unjustified delay by the officers during which time a warrant could have been obtained. To that end, the police left the station to arrest Taylor as soon as they secured probable cause through the confessions of the other defendants. "As the time between when the police formulate probable cause and when defendant is arrested grows longer, the 'exigency' of the situation is certainly diminished." *People v. Smith*, 152 Ill. 2d 229, 249, 604 N.E.2d 858, 866 (1992).

Third, we note that the crime was both violent and grave as six teenagers beat a man in his home resulting in his death. Fourth, the officers learned from the other defendants that Taylor was armed during the beating. The other defendants each reported that Taylor had used a metal pellet gun to hit decedent on the head. Further, since all of the other defendants made statements to the effect that they had been expecting the police, the officers had reason to believe Taylor would also expect the police and have his weapon with him for protection. In any event, even if the officers did not have reason to believe Taylor was armed, they still had reason to believe that he was a violent individual. See *People v. Sakalas*, 85 Ill. App. 3d 59, 66, 405 N.E.2d 1121, 1127 (1980) (Exigent circumstances existed partly because the officers knew that defendant had used a pipe to violently beat the victim, even though they had no reason to believe that he was armed when arrested).

Fifth, the officers were acting on a clear showing of probable cause. Probable cause to arrest may be established by an accomplice where he makes a statement against his penal interest while in police custody if there is some indicia of reliability. *People v. Almendarez*, 266 Ill. App. 3d 639, 642, 639 N.E.2d 619, 622 (1994); *People v. James*, 118 Ill.

2d 214, 224-25, 514 N.E.2d 998, 1001-02 (1987). Here, Williams, whose statement was not suppressed, confessed to his own involvement in the incident. He also implicated Taylor in the beating. Further, Williams recounted the events that instigated the beating which were already known to the officers from speaking with the CHA police. Similarly, in *People v. Johnson*, the information from defendant bore indicia of reliability since he implicated himself in the offense and since it was corroborated by other information known to the officer at the time of his arrest. *People v. Johnson*, 121 Ill. App. 3d 358, 364, 459 N.E.2d 1000, 1005 (1984).

Sixth, while there was only a small likelihood that Taylor would escape if he was not quickly apprehended, the fact that other arrests were made across a "gangway" and occurred only a few hours earlier bolsters the case for finding exigent circumstances. See *Cobb*, 97 Ill. 2d at 486, 455 N.E.2d at 40 (the fact that an accomplice was arrested gave rise to the possibility that the defendant, who lived a few blocks from the police station, would be alerted to her interrogation, giving the defendant the incentive to either flee or prevent his peaceful arrest).

Seventh, there was strong reason to believe that the suspect was on the premises. The officers learned from Taylor's sister that he was at his grandmother's house that evening. Eighth, the police entry was made peaceably. When the officers arrived at Taylor's grandmother's house, they knocked on the door and told Taylor's grandmother that they wanted to question Taylor about a homicide. We conclude that the arrest of Taylor was "reasonable" due to the exigent circumstances that surrounded it, and, therefore, it was not a violation of the fourth amendment.

Taylor argues that his possession of the BB gun did not constitute an exigent circumstance because it was unrelated to decedent's death. Taylor cites *People v. Riddle*, 258 Ill. App. 3d 253, 630 N.E.2d 141 (1994), to support this assertion. However, in *Riddle*, the court held that officers may be excused from the "knock and announce" requirement if exigent circumstances exist sufficient to justify the intrusion. The court held that the mere presence of guns, drugs and pit bulls in the apartment did not give rise to exigent circumstances to allow a "no-knock entry." We fail to see how this case aids Taylor's argument. Taylor used his weapon in the beating of decedent.

This court has held that exigent circumstances may exist if defendant is reasonably likely to be armed at the time of the arrest, which can be affected by whether defendant was armed during the criminal act. *People v. Chambers*, 200 Ill. App. 3d 538, 547, 558 N.E.2d 274, 281 (1990). Taylor carried a BB gun with him to decedent's apartment and

then hit decedent on the head with the BB gun during the incident. According to *Chambers*, the officers could take this into account in determining whether Taylor would be armed when they attempted to arrest him. *Chambers*, 200 Ill. App. 3d at 547, 558 N.E.2d at 281. It is irrelevant that the gun may not have been the instrument that caused decedent's death. What is important is that Taylor was armed with a BB gun during the beating of decedent. Since we conclude Taylor's arrest was legal, we must also conclude that his statement was properly admitted since it was not the fruit of an illegal arrest.

For the foregoing reasons discussed in the nonpublished material, we reverse and remand Nazareth's and Jonathan's convictions and sentences for first degree murder and home invasion. Taylor's conviction and sentence for felony murder are affirmed. Taylor's conviction and sentence for home invasion are vacated. Williams' conviction and sentence for first degree murder and home invasion are affirmed.

Affirmed in part, reversed in part and remanded, and vacated in part.

RAKOWSKI, J., concurs.

PRESIDING JUSTICE O'MARA FROSSARD, specially concurring on Taylor's appeal:

The defense argues that the jury should have received instructions on involuntary manslaughter and second degree murder. While I concur with the majority's resolution of the jury instruction issue, I believe the reliance by the majority on the analysis used in *People v. Rixie* was unnecessary. The issue in this case regarding jury instruction is resolved by reviewing the evidence. The majority undertakes such review and based on the record properly concludes the evidence did not warrant giving the jury these instructions. I agree with this conclusion and the analysis should end there.

I agree with the majority's holding that the trial court did not abuse its discretion in refusing to give Taylor's second degree murder provocation instruction because Taylor did not present sufficient evidence to warrant giving that instruction. Specifically, the record does not contain evidence that Taylor was acting under a sudden and intense passion resulting from a serious provocation at the time Taylor beat the victim. I also agree with the holding of the majority that the trial court did not abuse its discretion in refusing to give Taylor's second degree murder instruction based upon his unreasonable belief in the need for self-defense. The record did not reflect sufficient evidence to warrant giving the jury that instruction.

However, I disagree with the majority's reliance on the *Rixie* approach because such reliance tends to lend approval to the prosecution gamesmanship condoned by the court in *Rixie,* where the prosecution was allowed to limit jury instruction to only the charge of felony murder by deciding to nol-pros the charge of first degree murder after evidence had been heard by the jury on the charge of first degree murder and after the court agreed to instruct the jury on the lesser-included offenses of murder. *Rixie,* 190 Ill. App. 3d at 825.

In *Rixie,* the court as the result of evidence heard at trial agreed to instruct the jury on the lesser-included offenses of murder based on the first degree murder charge. Following the initial instruction conference and upon learning of the court's intention to instruct on the lesser-included offenses, the State was allowed to dismiss the first degree murder charge. The court then refused to instruct on the lesser-included offenses of murder but instructed the jury on felony murder only. The jury was thereby limited to finding the defendant guilty or not guilty of felony murder. Once the charges are brought and evidence is presented and as a result of those charges and evidence the record reflects that instruction on a lesser-included offense is warranted by the evidence, I believe fundamental fairness requires that a prosecution motion to dismiss the charges that provide the basis for the lesser-included offense instruction should be denied and instruction on the lesser-included offense should be given. Where there is sufficient evidence to support an instruction to the jury on a lesser-mitigated offense, yet the trial court denies the jury the opportunity to return a verdict of guilty on that mitigated offense, such denial contributes to the likelihood of not only inaccurate, but substantially unfair, jury verdicts.